IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: THE HORNED DORSET PRIMAVERA INC. <br><br> Debtor | CASE NO. 15-03837 (ESL) <br><br> CHAPTER 11 |

## OPINION AND ORDER

This case is before the court upon the Debtor's *Objection to Claim No. 4 Filed by the Puerto Rico Tourism Company* (Docket No. 174) and the *Response in Opposition to Debtor's Objection to the Puerto Rico Tourism Company's Claim* (Docket No. 253) filed by the Puerto Rico Tourism Company (thereafter referred to as "PRTC"). The Debtor filed its *Reply to the Puerto Rico Tourism Company's Opposition to Objection to Claim No. 4* (Docket No. 272) and the PRTC filed its *Sur-Reply to Reply to Puerto Rico Tourism Company's Opposition to Objection to Claim No. 4* (Docket No. 289). For the reasons stated below, the Debtor's *Objection to Claim No. 4 Filed by the Puerto Rico Tourism Company* is denied.

### Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### Procedural Background

The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 22, 2015. The Debtor in the Statement of Financial Affairs ("SOFA") listed in line item #4 that the PRTC had filed a collection of monies action in state court against the Debtor within one year preceding the filing of the bankruptcy case. The Debtor did not disclose in its Schedules that it had any debt with the PRTC.

On June 2, 2015, the PRTC filed proof of claim #4-1 in the amount of $1,208,489.47 and listed the entire amount of its claim as a priority under 11 U.S.C. §507(a)(8). The basis of the

-1-

PRTC claim consists of unpaid room taxes. PRTC indicated that the amount owed from the debt that was transferred from the Puerto Rico Treasury Department is in the amount of $228,072 for the years 1999 through 2003, and the remainder amount of $980,417 was for the PRTC's debt, which includes principal, interests and surcharges for the period of March 2004 through April 2015. The amount of $980,417 is broken down in the following manner: $658,130 is allocated to principal; $226,971 to interests and $95,316 is to surcharges.

On December 2, 2016 a hearing was held in which the Court granted the Debtor and Treasury 90 days to file a settlement agreement regarding the objection to Treasury's proof of claim #17-2. The hearing was continued without a date. The court noted that the pending legal issue is whether certain charges are time barred, that is, the applicability of the statute of limitations to each charge, corresponding to specific time periods. The court also stated that amortization shall be raised by a separate motion. (Docket No. 298). The parties did not settle the contested matter.

**Debtor's arguments regarding its objection to PRTC's claim number 4**

The Debtor's objection to PRTC's proof of claim number 4 is premised on the following grounds: (i) claim 4 includes principal, interest, and surcharges that are time barred by the statute of limitations, in particular any debt prior to February 2004, pursuant to Article 39 of the Commonwealth of Puerto Rico Room Occupancy Rate Tax Act (hereinafter referred to as the "Room Tax Act") 13 L.P.R.A. §2272c; (ii) PRTC has no legal authority to collect taxes prior to January 3, 2004, thus the amount of $228,072.47 claimed for taxes for years 1999-2003 should be disallowed; (iii) the penalties and surcharges are not entitled to priority status (iv) all interests, surcharges and penalties that are more than five (5) years old are also time barred by the statute of limitations pursuant to Article 1866 of the Puerto Rico Civil Code ("PR Civil Code"); (v) the service charge is not considered taxable income for the purposes of calculating the room taxes owed by the Debtor under the Room Tax Act; and (vi) PRTC levies compound interest over the penalties and surcharges previously accrued pursuant to Article 46 of the Room Tax Act, 13 L.P.R.A. §2272j. Admittedly, only principal tax balance and interest are entitled to priority. Thus,

-2-

the total amount of interest includes interests improperly accrued over surcharges which are not a priority.

**PRTC's arguments regarding opposition to objection to claim number 4**

PRTC in its opposition contends that: (i) the applicable statute of limitations to the claim for $228,072.47 in room taxes accrued from 1999 through 2003 is a fifteen (15) year term pursuant to Article 1864 of the PR Civil Code, 31 L.P.R.A. §5294, for claims of breach of contract and the Final Agreement was executed on March 1, 2004; (ii) on February 3, 2014, a complaint was filed in state court to collect the amounts owed for the years 1999-2003 under the Final Agreement and all other outstanding amounts owed at the time; (iii) the statute of limitations was tolled and the claim is not time barred pursuant to Article 1873 of the PR Civil Code, 31 L.P.R.A.§5303. Alternatively, the statute of limitations was tolled on numerous occasions due to the acknowledgments of the debt and requests for payment plans by the Debtor and the extrajudicial claims made by the PRTC; (iv) Article 58 of the Room Tax Act, 13 L.P.R.A.§2272t, provides that the Final Agreement entered into between the Secretary of the Treasury and the Debtor, whereby the Debtor agreed to a payment plan for the room taxes owed for the years 1999-2003, is enforceable by the PRTC; (v) Article 39 of the Room Tax Act provides that, "the period agreed on in the manner described above may be extended by subsequent written agreements entered into before the expiration of the period previously agreed on;" (vi) the claim for interests and surcharges accrued from the year 2004 through February 2009 are not time barred because pursuant to Article 39 of the Room Tax Act, the applicable statute of limitations for a claim for interests and surcharges accrued on account of overdue room taxes is ten (10) years; (vii) alternatively, if the applicable statute of limitations for the claim of interests and surcharges accrued from 2004 through 2009 were five (5) years (instead of ten years), PRTC's claims of interests and surcharges that accrued from 2004 through 2009 are not time barred because the claim was tolled due to the Debtor's various acknowledgments of its debts and requests for payment plans and as a result of an audit performed by the PRTC in the year 2009 regarding the

calendar year 2007; and (viii) as a result of the audit, the Debtor was required to amend its tax declarations for the years 2004 through 2006, and 2008 onward, thus, the claim is not time barred.

The first issue the court will address is Debtor's allegation that the PRTC has no legal authority to collect taxes prior to January 3, 2004, and, therefore the amount of $228,072.47 claimed for taxes for years 1999-2003 should be disallowed. The second issue the court will delve into is the applicable statute of limitations to collect an assessed tax debt pursuant to a Final Agreement executed prior to the effective date of the Room Tax Act. The third issue is whether there are two (2) different statute of limitations under the Room Tax Act; namely, a ten (10) year statute of limitations for the amount owed strictly for taxes (principal) and article 1866 of the PR Civil Code, 31 L.P.R.A. §5291, applied in a suppletory manner establishing a five (5) year statute of limitations to collect on the "debt," inclusive of interests and surcharges. Lastly, the court will determine the amount of the PRTC claim that is entitled to priority status pursuant to 11 U.S.C. §507(a)(8)(C), the statutory provisions of the Room Tax Act and, if applicable, the PR Civil Code in a supplementary manner. The PRTC has already conceded that the surcharges are not entitled to priority and should be treated as a general unsecured claim. The Debtor has withdrawn the argument that the principal balance of claim number 4 was erroneously calculated because the guests paid room tax over the service charge rendering the same moot (Docket No. 272, pg. 3).

Applicable Law and Analysis

The Debtor's first argument is that the PRTC has no legal authority to collect taxes prior to January 3, 2004, which was the effective date of the Room Tax. Thus, the PRTC may not collect the taxes owed for the years 1999-2003 because the Room Tax Act does not apply retrospectively. The Debtor references Article 69 of the Room Tax act, which provides as follows: "This Act [this chapter] shall take effect one hundred and eighty (180) days after its approval, except for the provisions of Section 31, which shall become effective as of July 1, 2003." The Room Tax Act was enacted on September 9, 2003 and became effective one hundred eighty days (180) thereafter, on March 7, 2004. The Final Agreement was executed on March 1, 2004.

Subchapter IV of the Room Tax Act, titled "Final Provisions" includes various sections that establish the process by which the transfer of accounts receivables and collection of the same would occur from the Puerto Rico Treasury Department to the PRTC.

Article 54. *Tax Collection* of the Room Tax Act provides:

"[w]ithin a term that shall not exceed the date of performance of the transfer provided in this chapter, the Secretary of the Treasury shall review the registries at the Department of the Treasury, with regard to the lodgings subject to the tax, and shall apply or credit the deposits pending registration. Similarly, the Secretary of the Treasury shall adjust said registries in relation to any error detected during the process or transaction related to the tax collection that has not been accounted for. Once this has been accomplished, the Secretary of the Treasury shall transfer to the Company the lodging registry related to the tax, the registry of all account receivables and the complete files of all pending transactions, which, once they are processed, could change the accounts receivable. The Company shall carry out all acts necessary to conclude the collection process of the transactions pending payment." 13 L.P.R.A. §2272r.

Article 55. *Transfer* of the Room Tax Act used[1] to read as follows:

"[p]ursuant to this Act [this chapter], all the powers, duties and obligations vested on the Department of the Treasury by law of regulation, in relation with the responsibility to impose, fix, sanction, determine, assess, collect, enforce, distribute, regulate and investigate the Tax shall be transferred to the Company.

Similarly, the Department of the Treasury shall transfer to the Company all programs, funds, files, archives and any others, related to the duties of assessing, determining, imposing, levying, collecting, investigating, enforcing and distributing the Tax that are necessary to achieve the purpose of this Act."

Article 56. *Administrative Determinations, Final Agreements, Existing Contracts pursuant to the Internal Revenue Code* used[2] to read as follows:

"[n]o provision in this Act [this chapter] shall be interpreted as altering, modifying or invalidating any agreement, claim or contract granted by the Department of the Treasury under the Internal Revenue Code, in relation to any tax event occurring prior to this Act's effective date [180 days after Sept. 9, 2003 with the exception of §31]."

---

[1] The court notes that section 55 was part of the Room Tax Act when it was originally enacted.

[2] The court notes that section 56 was a special provision that was part of the Room Tax Act when it was originally enacted.

Article 58. *Final Agreements* of the Room Tax Act provides:

"[t]he final agreements entered into by and between a taxpayer and the Secretary of the Treasury prior to the effectiveness of this act, and under the provisions of the Internal Revenue Code, shall not apply to future tax events occurring after this act's effective date. Notwithstanding the above, the final agreements entered into by the Secretary of the Treasury prior to the effective date of this act's effective date, shall be final and binding, even if they cover periods, if any, after this new act becomes effective." 13 L.P.R.A. §2272t.

After analyzing the above referenced sections of the Room Tax Act in light of the uncontested facts, the court concludes that the Final Agreement executed six (6) days before the Room Tax Act became effective was final and binding. The purpose of the Room Tax Act was to transfer all of the Puerto Rico Department of the Treasury's powers, duties and obligations to the PRTC. Amongst those transferred obligations was the one to conclude the collection process of the pending accounts receivables in conformity with Article 54 of the Room Tax Act, such as the one generated by the Final Agreement. The court notes that in this particular Final Agreement, both the Secretary of the Treasury and the Executive Director of the PRTC were parties and executed the Final Agreement. Moreover, the Final Agreement in controversy provides in the second paragraph of the section titled, "Determinations and Agreements" that effective April 1, 2004, all payments under the Final Agreement will be effectuated directly to the PRTC in conformity with Act No. 272 of September 9, 2003 (Docket No. 253, Exhibit 1, pg. 4). Therefore, this court holds that the PRTC has the statutory legal authority conferred by the Room Tax Act to conclude the collection process on a Final Agreement that was executed pursuant to the provisions of the Internal Revenue Code of Puerto Rico of 1994, as amended ("PR IRC 1994").

The second issue is whether the claim under the Final Agreement in the amount of $228,072.47 is time barred pursuant to the provisions of the Room Tax Act and/or whether the provisions of the PR Civil Code apply in a suppletory manner. The PRTC argues that the statute of limitations was tolled and the claim is not time barred pursuant to Articles 1864 and 1873 of

the PR Civil Code, 31 L.P.R.A.§5294 and §5303. Alternatively, the PRTC contends that the statute of limitations was tolled on numerous occasions due to the acknowledgments of the debt and requests for payment plans by the Debtor and the extrajudicial claims made by the PRTC.

The court notes that PRTC's Regulation 8395[3] is inapplicable in the instant case because the same was enacted on October 14, 2013 subsequent to the execution of the Final Agreement. There is no prior PRTC Regulation regarding the procedures for collection of room tax.

The Final Agreement in controversy was signed on March 1, 2004 and the same was executed pursuant to sections 6126 and 6127 of the PR IRC 1994. The debts covered in the Agreement were for income taxes that an employer is required to deduct and withhold from pay of his employees (payroll taxes) and for room taxes which the hotelier is obligated to collect, withhold and remit to the PRTC. The total amount owed, inclusive of interests, surcharges and penalties was $873,446.18, pursuant to a December 5, 2003 Debt Certification, which included the debts that had been assessed. As of December 5, 2003, there were also some debts as to room taxes that had not been assessed in the amount of $48,765. The stipulated terms of repayment pursuant to the Final Agreement provided that: the Debtor was condoned from paying interests, surcharges and penalties regarding its tax debts. This resulted in a principal balance of $577,177.20, of which $350,000 was paid by the Debtor. The remainder tax debt in the amount of $227,177.20 would be paid in a term not to exceed sixty (60) months beginning on March 1, 2004 and ending on February 28, 2009. The monthly payment (for a total term of 60 months) was in the amount of $3,786.29 plus an annual interest rate based on the LIBOR rate. It was further stipulated that the monthly payments would be sent to the Treasury Department until March 31,

---

[3] PRTC's Regulation 8395 in the Spanish language is titled, "Reglamento Aplicable para la Fiscalización y Cobro del Impuesto sobre el Canon por Ocupación de Habitación y sus Procedimientos Adjudicativos."

-7-

2004 and after April, 2004, the monthly payments would be made directly to the PRTC in accordance with Act No. 272 of September 9, 2003 (Docket No. 253, Exhibit 1).

The Final Agreement states in the first paragraph of the first page that it was executed pursuant to sections 6126 and 6127 of the Puerto Rico Internal Revenue Code of 1994, as amended. Paragraph nine of the Determinations and Agreements" section of the Final Agreement provides as follows:

"9. HDPH and PGHI agree that they shall comply with all of the provisions of the Code that may be applicable, as well as the regulations, circular letters, informative bulletins, administrative determinations which the Secretary, from time to time, may enter, as well as the provisions of any other applicable law and/or its regulations" (Docket No. 267-1, pg. 5).

This court finds that the Final Agreement in controversy is governed by the PR IRC 1994, Regulation 6549, and Article 58 of the Room Tax Act, 13 L.P.R.A. §2272t, which establishes that the Final Agreements entered into by the Secretary of the Treasury prior to the effective date of the Room Tax Act shall be final and binding. The court concludes that the PR Civil Code does not apply in a suppletory manner as there is a specific statute regulating the subject matter.  Refer to Articles 12[4] and 1838[5]  of the PR Civil Code, 31 L.P.R.A. §§12, 5249.  The obligation to collect on the account receivable that the Final Agreement generated was transferred to the PRTC as established in the Room Tax Act. Section 6091.03 of the Internal Revenue Code of 2011, as amended, titled, "Administrative determinations and final agreements in effect under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the

---

[4] Article 12 of the PR Civil Code provides: "[i]n matters which are the subject of special laws, any deficiency in such laws shall be supplied by the provisions of this title" 31 L.P.R.A. §12.

[5] Article 1838 of the PR Civil Code provides: "[t]he provisions of this part shall be understood without prejudice to what may be established in this title or in special laws with regard to specified cases of prescription" 31 L.P.R.A. §5249.

Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act or the Alcoholic Beverages Act of Puerto Rico" provides:

"No provision in this Code shall be understood to modify, alter, or invalidate any administrative determination, final agreement, claim, or contract executed under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act, as applicable, regarding any taxation matters pertaining to taxable years starting before January 1, 2011" 13 L.P.R.A. §33363.

Section 6091.05 of the Internal Revenue Code of 2011, as amended, titled, "Final agreements executed under the Puerto Rico Internal Revenue Code of 1994 of 1994, the Income Tax Act of 1954, the Commonwealth Act of the Government of Puerto Rico of 1987 [sic] or the Puerto Rico Estate and Gift Tax Act," provides in pertinent part:

"(a) General Rule.—Except as provided in subsection (b), any final agreements executed between a taxpayer and the Secretary pursuant to the provisions of the Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, or the Puerto Rico Estate and Gift Tax Act, which are identical to the corresponding provisions of this Code, shall be understood to have been executed under the provisions of this Code when:

(1) The Puerto Rico Internal Revenue Code of 1994.—Affecting tax liability for a year starting December 31, 2010." 13 L.P.R.A. §33365(a)(1).

Therefore, since the tax liability under the Final Agreement in controversy is for the years 1999-2001 and the date of the debt assessment was December 5, 2003, the Code that applies is the PR IRC 1994, as amended.

The applicable sections under the PR IRC 1994, as amended are the following:

Section 6126 titled, Final Agreements provides as follows:

"(a) Power- The Secretary or his/her authorized representative is hereby empowered to enter into written agreements with any person concerning the liability of such person, or of the person or estate on behalf of which he/she is acting, related to any taxes imposed by this Code for any taxable period.

(b) Purpose.- Such agreement, once executed, shall be final and conclusive, and except when proven that there was fraud or deceit, or misrepresentation of a pertinent fact:

(1) The case shall not be reopened concerning the terms agreed upon, nor shall the agreement be modified by any official, employee, or agent of the Government of Puerto Rico, and

(2) Such agreement, or any determination, assessment, charge, payment, reduction, refund, or credit made thereunder shall not be nullified, modified, rendered ineffective, or overlooked in any lawsuit, action, or proceeding.

(c) Penalties.- The penalties for the violations regarding final agreements are set forth in section 6053 of this subtitle." 13 L.P.R.A. §8126.

Section 6127 titled, Commitments to pay provides as follows:

"(a) The Secretary is hereby empowered to enter into written payment agreements whereby he/she pledges to render ineffective any taxes assessed plus additions, including civil or criminal penalties, as may apply in cases related to any taxes imposed by the Puerto Rico Internal Revenue Code of 1994, as amended, the Income Tax Act of 1954, as amended, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, as amended, the Puerto Rico Estate and Gift Act, as amended, or this Code, before such cases are referred to the Department of Justice for prosecution.

(b) *General requirements*. - Any payment agreement made pursuant to the provisions of this subsection must be authorized by the Secretary of the Treasury or his/her authorized representative, who shall justify the grounds on which the payment agreement was granted and provide the following information:

(1) Amount of assessed taxes.
(2) Amount of interest on and additions to taxes.
(3) Current amount to be paid under the terms of the payment agreement.
(4) Analysis of the financial situation of the taxpayer which shows his/her ability to pay the amount established in the payment agreement.
(5) Any other document or proof required by the Secretary under such rules and regulations, as the Secretary may establish.

(c) *In absence of resources*. - If the taxpayer fails to show that he/she has sufficient resources to pay the assessed taxes, the Secretary, through his/her authorized representative, shall evaluate and determine whether the payment agreement is the proper method to collect such taxes, absent the resources to ensure collection of the assessed taxes.

(d) *Effects of offer application; prescription*.-

(1) Filing an offer application by a taxpayer shall have the effect of interrupting the prescriptive term applicable to all debts included in such offer, and the same shall begin to run as follows:

-10-

(A) *Denial.-* Sixty (60) days after the date the Department notifies the denial of such offer.

(B) *Acceptance.* – Sixty (60) days after the date the Department notifies the taxpayer about the revocation of the previously accepted offer agreement. Notwithstanding the provisions of Section 6006, the Department may collect those debts included in the offer application through demand for payment proceedings or court proceedings within five (5) years following the date the denial of the offer was notified, or within the remainder of the prescriptive term provided in Section 6006, whichever is greater.

(e) The Secretary is hereby empowered to charge, through regulation, such service fees as he/she deems necessary to evaluate the applications submitted for his/her consideration, pursuant to the previsions of this section." 13 L.P.R.A. §8127.

Section 6006 titled, *Exceptions to the prescriptive term* provides in pertinent part:

(d) *Collection after assessment*.-

(1) When the assessment of any taxes imposed by this Code has been made within the prescriptive term properly applicable thereon, such taxes may be collected by means of demand for payment proceedings or court proceedings, insofar as these are filed (i) within seven (7) years following the date of tax assessment, or (ii) prior to the expiration of any term for collection agreed upon in writing before any seven (7) year term between the Secretary and the taxpayer. The term agreed upon may be extended by successive written agreements made before the expiration of the term previously agreed upon.

(2) Notwithstanding the provisions of Act Num. 230 of July 23, 1974, as amended, known as the "Puerto Rico Government Accounting Act," the Secretary, on his/her own initiative or by request of the taxpayers, shall proceed to eliminate from the files of the Department, and shall be barred to collect, any debts imposed under this Code or preceding laws of which ten (10) years have already elapsed from the date of their assessment. For purposes of determining the prescriptive term, any interruption thereof shall be deemed to be the result of collection efforts made by the Secretary by means of demand for payment proceedings or court proceedings." 13 L.P.R.A. §8026(d).

Section 6007 titled, *Interruption of prescriptive term* provides in pertinent part:

"The prescriptive term established in sections 6005 or 6006 of this subtitle for the assessment and for filing of demand for payment proceedings or court proceedings for collection in connection with any deficiency, shall be interrupted after mailing the notice concerning the final determination established in section 6002(a) of this subtitle by the term during which Secretary is barred from making the assessment and filing the demand for payment proceedings or court proceedings (and in any case, when resorting to the

-11-

Court of First Instance, until the decision of the court becomes binding), and for the sixty (60) days that follow." 13 L.P.R.A. §8027.

The PRTC contends that that the statute of limitations was tolled on numerous occasions due to the acknowledgments of the debt and requests for payment plans by the Debtor and the extrajudicial claims made by the PRTC.

Paragraphs seven through nine of the "Determinations and Agreements" section of the Final Agreement provide as follows:

"7. HDPH promises to comply with its future tax obligations. Non-compliance of any payment herein agreed within the five (5) years following the acceptance of this offer, shall be reason for the resolution of this Final Agreement. As a result, the debt shall be restituted to its original status and payments shall be credited as if this Final Agreement had not been executed.

8. This agreement does not close the terms of the statute of limitations to which the Secretary is entitled under the provisions of the Code for the tax years subject to such.

9. HDPH and PGHI agree that they shall comply with all of the provisions of the Code that may be applicable, as well as the regulations, circular letters, informative bulletins, administrative determinations which the Secretary, from time to time, may enter, as well as the provisions of any other applicable law and/or its regulations" (Docket No. 267-1, pg. 5).

There is also a section titled, "General Provisions" of the Final Agreement and the second paragraph of that section provides as follows:

"2. The Parties agree that the matters herein stipulated shall be final and shall not be reopened or subject to changes or modifications by officers, employees, or agents of the Commonwealth of Puerto Rico, annulled or set aside unless it is demonstrated that there was fraud or a misrepresentation of a relevant or significant fact, as well as discovery of that the Secretary becomes aware of the existence of assets of the Taxpayer that have not been disclosed and that were not object of consideration by the Secretary at the time of ratifying this Agreement. Moreover, the taxpayers waive all forms of notice regarding the default and collection in its original state" (Docket No. 267-1, pg. 6); (Docket No. 253, Exhibit 1, pg. 6)

The last sentence of paragraph two (2) of the "General Provisions" section of the Final Agreement provides as follows, "[m]oreover, the taxpayers waive all forms of notice regarding

the default and collection in its original state." Therefore, the court finds that pursuant to the Final Agreement, the taxpayers waived receiving any form of notices regarding payment defaults and collection of the debt in its original state.

This court also concludes that the taxpayers waived the prescriptive term to collect on the debt pursuant to the Final Agreement since paragraph eight (8) of the Determinations and Agreements Section of the Final Agreement provides that the agreement does not close the terms of the statute of limitations to which the Secretary is entitled to. Paragraph eight (8) of the "Determinations and Agreements" section of the Final Agreement provides that, "[t]his agreement does not close the terms of the statute of limitations to which the Secretary is entitled under the provisions of the Code for the tax years subject to such." The statute of limitations refers to the collection of the debt, given that the debt had been assessed on December 5, 2003. Moreover, Section 6127-1(c)(1)[6] of Regulation 6549 requires that all of the debts must be assessed in order to execute a written payment agreement. Therefore, this paragraph is not referring to the statute of limitations to assess a tax liability. Paragraph 8 means that the prescriptive term to collect on the debt is left open, and is not applicable.

---

[6] Section 6127-1(c) of Regulation 6549 provides in the Spanish language:

"(c) Alcance del acuerdo.-(1) El compromiso de pago comprenderá todas las obligaciones a la fecha de aprobación del acuerdo que por concepto de contribuciones adeude el contribuyente. No se aceptará ningún compromiso de pago en caso de que haya alguna contribución, adición o penalidad pendiente de imposición, hasta tanto ésta se haya tasado. No obstante lo anterior, el acuerdo podrá señalar por separado las pendalidades civiles y criminales que se remiten. En ningún caso se condonarán penalidades criminales a menos que la violación a los estatutos o Reglamentos que dan base a la imposición de la penalidad haya sido cometida sin intención deliberada de defraudar al fisco."

Regulation 6549[7] explains the manner in which written payment agreements under section 6127 of the IRC PR 1994, as amended, should be enforced. In particular, Section 6127-1(d)(3)[8] of Regulation 6549 provides that one of the effects of a written payment agreement is that: "[t]he taxpayer waives in writing the prescriptive term that the Secretary has to demand the payment of the debt that is included in the written payment agreement." Section 6127-1(d)(3) of Regulation 6549. In the instant case, Debtor agreed to pay the remaining tax debt pursuant to a five (5) year payment agreement or until February 28, 2009. However, the Debtor defaulted on its payment plan and the PRTC filed a collection of room tax lawsuit in state court on February 3, 2014. Section 6127-1(d)(7)[9] of Regulation 6549 provides that if the taxpayer defaults on the written agreement, the same will be rescinded and the debt will be collected as if there had been no agreement. The payments made will be applied to the restituted debt, ignoring the agreement. Clearly, the terms of the Final Agreement and Regulation 6549 compel this court to find that the Debtor waived any term to collect on the debt.

The third issue is whether the claim for interests and surcharges that accrued from the years 2004 through February 2009 is time barred. The Debtor argues that there are two (2) different statute of limitations under the Room Tax Act; namely, a ten (10) year statute of limitations pursuant to Article 39 of the Room Tax Act for the amount owed strictly for taxes

---

[7]Regulation 6549 provides the following in the Spanish language: "Reglamento sobre Ofertas en Compromiso bajo las disposiciones de la Sección 6127 de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, conocida como "Código de Rentas Internas de Puerto Rico de 1994", promulgado al amparo de la Sección 6130 del Código que faculta al Secretario de Hacienda a adoptar los Reglamentos necesarios para poner en vigor dicho Código; y para derogar el Artículo 6127-1 contenido en el Reglamento Núm. 5619 del 6 de mayo de 1997."

[8] Section 6127-1(d)(3) of Regulation 6549 provides in the Spanish language: "(d) Efecto del acuerdo—
        (3) El Contribuyente renunciará por escrito al período prescriptivo para que el Secretario pueda exigir el pago de la deuda incluida en el compromiso de pago."

[9] Section 6127-1(d)(7) of Regulation 6549 provides in the Spanish language: "(d) Efecto del acuerdo—
        (7) Si un contribuyente incumpliere con lo acordado, se dará por resuelto el acuerdo y se pondrá la deuda al cobro como si no hubiese hecho acuerdo alguno; se aplicarán los pagos a la deuda restituida ignorando el acuerdo."

-14-

(principal) and article 1866 of the PR Civil Code, 31 L.P.R.A. §5291, applied in a suppletory manner establishing a five (5) year statute of limitations to collect on the "debt," inclusive of interests and surcharges. PRTC argues that even if the statute of limitations were five (5) years for interests and surcharges the claim was tolled due to Debtor's various acknowledgments of its debts and requests for payment plans as a result of the audit performed by the PRTC in the year 2009. Moreover, as a result of the audit, the Debtor was required to amend its tax declarations for the years 2004 through 2006, and 2008 onward, thus the claim is not time barred.

Before addressing this particular controversy, the court clarifies that there are two (2) different statute of limitations under the Room Tax Act. There is a statute of limitations for the assessment of a particular debt or deficiency pursuant to Article 38 of the Room Tax Act, 13 L.P.R.A. §2272b, and there is another statute of limitation for collection based upon the assessment pursuant to Article 39 of the Room Tax Act, 13 L.P.R.A. §2272c.

In order to place the following discussion in its proper legal perspective, the court will set forth the applicable statutory provisions.

Article 38 of the Room Tax Act titled, "Statute of limitations—Assessment" provides:

> "[c]onsidering that the hotelier becomes a collection agent for the Commonwealth of Puerto Rico, the Company shall not be subject to any statute of limitations to conduct an assessment of a particular debt or deficiency." 13 L.P.R.A. §2272b.

The term "assessment" is defined in Article 2 of the Room Tax Act as:

> "[m]eans the procedure through which the Company may determine the amount owed by the taxpayer for a debt or deficiency." 13 L.P.R.A. §2271(34).

The assessment is for the amount owed by a taxpayer for a debt or a deficiency. The PRTC is not subject to any statute of limitations to conduct an assessment pursuant to Article 38. The terms "debt" and "deficiency" are defined terms under the Room Tax Act. The term "debt" is defined in Article 2 of the Room Tax Act in the following manner:

"[m]eans the room occupancy rate multiplied by the percentage rate of the applicable tax for the period of occupancy plus any fines, penalties, surcharges or interests owed by the hotelier" 13 L.P.R.A. §2271(17).

The term "deficiency" is defined in Article 2 of the Room Tax Act as:

"[m]eans a debt, minus the amount paid by the taxpayer" 13 L.P.R.A. §2271(16).

Article 39 of the Room Tax Act, titled, "Statute of limitations—Collection" provides:

"(a) [i]f the Company shall have conducted an assessment which reflects that a taxpayer has a deficiency or debt, the tax may be collected through a distraint procedure, provided that it is commenced: (1) within a period of ten (10) years following the date of the assessment; or (2) before the expiration of any period, in excess of the ten (10) year period agreed in writing by the Company and the taxpayers. The period agreed on in the manner described above may be extended by subsequent written agreements entered into before the expiration of the period previously agreed on.

(b) [n]otwithstanding the provisions of §§283-283p of Title 3, also known as the "Commonwealth of Puerto Rico Accounting Act", the Company shall proceed to eliminate Taxpayers' records and shall be prescribed [sic] from collecting the debts imposed by this chapter or prior acts when ten (10) years have passed since the date of the assessment or since the expiration of any period agreed on between the Company and the taxpayer. Provided, that any interruption of such period shall be taken into consideration, for purposes of the determination of the statute of limitations" 13 L.P.R.A. §2272c.

Article 40 of the Room Tax Act, titled, Statue of limitations—Tolling," provides:

"[t]he statute of limitations provided by §2272c of this title shall be interrupted with respect to any debt or deficiency, for the period during which the Company is impeded from commencing a disdraint procedure, and, in every case, if they appeal to any of the courts of Puerto Rico, until the court's decision is final and firm and for the subsequent sixty (60) days" 13 L.P.R.A. §2272d.

The term "tax" is defined in Article 2 of the Room Tax Act as:

"[m]eans the tax set forth in §2271o[10] of this title, unless otherwise provided in this chapter" 13 L.P.R.A. §2271(24)

---

[10] Article 24 provides in pertinent part, "(a) [t]he tax shall be a mathematical calculation resulting from the multiplication of the rate provided by subsection (b) of this section by the room occupancy rate, and the period of occupation of the room" 13 L.P.R.A. §2271o(a)

-16-

The PRTC in June and July 2006 sent to the Debtor two (2) collection letters that disclosed the breakdown between the amounts owed pursuant to the Final Agreement and the monies owed for the subsequent room tax for the following periods: July, August, September 2004; November and December 2004; January, February, March, April, June and July 2005. The Debt Certification provided by the PRTC reads in pertinent part as follows:

> "[T]his certification may be affected by any document that is in the process of an account investigation or intervention already initiated or about to be initiated regarding this taxpayer by the Room Tax Division as of the date of this certification and upon which a deficiency has still not been determined. This certification is not valid without the authorized signature and the official seal, both in the original" (Docket Nos. 253-2, pgs. 5 & 14), (Docket No. 267-4).

The PRTC sent to the Debtor via certified mail an "Investigation Notice" dated October 24, 2008 informing the Debtor that its Tax Occupancy Division will initiate an investigation for the period of January through December 2007 (Docket No. 267-7).

The PRTC also sent the Debtor a letter titled, "Audit Result" dated June 30, 2009 in which the PRTC requested the Debtor that, given the deficiencies found in the audit, the Debtor voluntarily amend the monthly declarations corresponding to the period from March 2004 to December 2006 and from January 2008 to May 2009 in order to determine the real amount owed. The letter states as follows:

> "Due to those deficiencies found, you were requested to voluntarily amend the monthly declarations corresponding to the periods from March 2004 to December 2006 and from January 2008 to May 2009 (see pages 5 and 7 of the External Audit Report). Enclosed we have included the corresponding forms.
>
> Please bear in mind that we need to receive the amended monthly declarations in order to determine the real amount owed. Once this process has been completed, the case will be referred to the Committee for the evaluation of the Payment Plan you requested, in the letter dated June 15, 2009. The evaluation of the Payment Plan will be in the responsibility of the Room Tax Evaluating Committee." (Docket No. 267-8).

The PRTC did not include as an Exhibit the June 15, 2009 letter that the Debtor sent to the PRTC.

Subsequently, the PRTC sent to the Debtor a letter dated February 10, 2010, regarding the audit performed for the year 2007 and the PRTC's request to amend the room tax declarations for the years 2004, 2005, 2006 and 2008 up to the present date. The amendments are for service charge concepts. The PRTC states that the Debtor had previously mentioned its interest in applying for a payment plan. The PRTC in its letter lists the requirements that the Debtor needs to comply with to qualify for a payment plan; namely: (i) submit the amended room tax declarations requested in the audit process; (ii) letter signed by the hotelier explaining in detail the reasons it was unable to pay; (iii) financial statements for the last two (2) years and income tax returns for the last two (2) years; and (iv) complete the form enclosed, in particular the section as to the hotelier information (Docket No. 253-9).

Thereafter, the PRTC sent a letter to the Debtor via certified mail dated March 24, 2011, stating that the PRTC is updating the documents regarding the payment plan request and thus requests the following documents: (i) a letter signed by the hotelier explaining in detail the reasons it could not pay; and (ii) financial statements for the last two (2) years and income tax returns for the last two (2) years. These documents must be submitted by April 7, 2011 (Docket Nos. 253-5 & 268-1). This letter does not list the amended monthly room tax returns as part of the documents that it has not received related to the plan payment request.

The court concludes that as of February 10, 2010, the PRTC had not assessed the room tax owed by the Debtor corresponding to the period from March 2004 to December 2006 and from January 2008 to May 2009 because the PRTC had not received the amended room tax declarations from the Debtor for this period. The room tax deficiency for the year 2007, which was the year that was audited, and the deficiency for this particular year was assessed as of June

30, 2009, which was the date that the PRTC sent the letter regarding the audit result and requested the amended room tax declarations. The court notes that PRTC does not provide the dates that the amended room tax declarations were submitted to the PRTC in order to determine the tax deficiency.

In view of the foregoing, this court finds that there is no statute of limitations to conduct an assessment of the debt or deficiency pursuant to Article 38 of the Room Tax Act, and once the debt is assessed, the PRTC has ten (10) years to collect on the same in conformity with Article 39 of the Room Tax Act. The audit performed by the PRTC and the requests made by the PRTC to the Debtor to file the amended room tax declarations and the collection of room tax lawsuit interrupted the ten (10) year statute of limitations period to collect on the room tax debt or deficiency. PRTC assessed the deficiency for the room tax for the year 2007 (in the amount of $8,035) in the amended June 30, 2009 audit report and also requested the amended room tax declarations from March 2004 through December 2006 and for the years 2008 through May 2009 in order to assess the debt or deficiency for this period. Thus, as of June 30, 2009, the PRTC had not assessed the debt or deficiency for above referenced period, and the ten (10) year statute of limitations had not begun to run. Subsequently, the PRTC filed a collection of room tax lawsuit against the Debtor on February 3, 2014, within less than five (5) years of the June 30, 2009 letter. Thus, the court concludes that the PRTC's claim for principal, interest and surcharges from March 2004 through February 2009 is not time barred.

At this juncture, given that the lawsuit was filed less than five years after the June 30, 2009 audit result letter, the court will not delve into the legal issue of whether the interests and surcharges pursuant to Article 39 of the Room Tax Act have a different collection statute of limitations period (namely five years) than the statute of limitations to collect on the tax (namely the principal). However, the collection of tax debt or deficiency is based on the assessment of the

-19-

same which occurs prior to the collection. In this case, the assessment is of a particular debt or deficiency, contrary to Debtor's argument that collection should be of the tax (principal) only and not of the debt or deficiency.

Conclusion

For the reasons herein, the Debtor's *Objection to Claim No. 4 Filed by the Puerto Rico Tourism Company* is denied.

The court concludes that the Final Agreement is governed by the IRC PR 1994, as amended, and Regulation 6549, which applies particularly to written payment agreements pursuant to Section 6127 of the IRC PR 1994, as amended.

As stated above, the court also concludes that the Debtor waived the prescriptive term for collection of this particular debt pursuant to the Final Agreement, Section 6127 of the PR IRC 1994 and Section 6127-1(d)(3) of Regulation 6549. Thus, PRTC is not barred from collecting the amount of $228,072.47.

Moreover, the PRTC's claim for principal, interest and surcharges from March 2004 through February 2009 and the amounts subsequent to that date are not time barred.

Consequently, the PRTC's claim is a priority claim in the amount of $1,113,173.47 (principal and interests) pursuant to 11 U.S.C. §507(a)(8), and the remainder $95,316 for surcharges is a general unsecured claim.

SO ORDERED.

In San Juan, Puerto Rico, this 19th day of January, 2018.

Enrique S. Lamoutte
United States Bankruptcy Judge

-20-