IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: THE HORNED DORSET PRIMAVERA, INC. | CASE NO. 15-03837 (ESL) |
| Debtor | CHAPTER 11 |

OPINION AND ORDER

This case is before the court upon the Debtor's *Motion for Civil Contempt for Violation of the Automatic Stay Injunction* against Inmobiliaria T&C, Inc. (hereinafter referred to as "ITC") alleging a willful violation of the automatic stay under 11 U.S.C. §362(a) based on ITC's post-petition written request to the Property Registrar of Aguadilla to alter the rank of the Debtor's recorded right of usufruct, in order for the Debtor's property interest (recorded right of usufruct) to be junior to two (2) mortgage liens that encumber the real property (Docket No. 308). PRCI Loan, LLC (hereinafter referred to as "PRCI") filed a *Response to Motion for Civil Contempt for Violation of the Automatic Stay Injunction (Docket No. 308)* even though the civil contempt is against ITC. PRCI alleges that it is compelled to respond because amongst the remedies sought by the Debtor one is to subordinate PRCI's mortgage liens that encumber the real property of which ITC is the title holder to the Debtor's usufruct lien (Docket No. 310). Several replies and sur-replies regarding this issue were filed by the Debtor and PRCI.

Subsequently, the Debtor (as usufructuary) and ITC (as title holder) filed a *Stipulation* in which ITC consented to the Debtor's request for a writ of execution to restore the *status quo* of the Debtor's right of usufruct as of the date of the filing of the petition, without prejudice of any interested party filing a motion for relief from the automatic stay to commence said procedure in state court. The Debtor in turn agreed to relinquish its claim against ITC for the alleged violation of the automatic stay and its request for sanctions, compensatory damages and attorney's fees (Docket No, 397). PRCI filed its *Objection to Stipulation between Debtor and Inmobiliaria T &*

*C, Inc. at Docket No. 397* (Docket No. 401) and the Debtor filed its *Response to PRCI's Objection to Stipulation and Opposition to Retroactive Lifting of the Stay* (Docket No. 412). Several replies and sur-replies regarding the objection to the *Stipulation* were filed by the Debtor and PRCI.

For the reasons stated below, the Debtor's *Motion for Civil Contempt for Violation of the Automatic Stay Injunction* against ITC for a willful violation of the automatic stay under 11 U.S.C. §362(a) is granted.

<u>Jurisdiction</u>

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K).

<u>Procedural Background</u>

The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 22, 2015. The Debtor included in Schedule A- Real Property- the following interests in property: (i) the right to acquire the land remnant ("derecho de retracto") over property located in Rincón with a value of $5,000,000; (ii) the right of usufruct for thirty (30) years of the exclusive possession of the main buildings, the service structures and all surrounding common areas, and access roads with a value of $1,800,000; and (iii) the right of easement over neighboring property with a value of $1,000,000. The Debtor lists in Schedule B- Personal Property- a note receivable from the sale of property to ITC dated July 19, 2005 in the amount of $8,080,000. The Debtor listed in Schedule G- Executory Contracts and Unexpired Leases- the following contracts: (i) agreement regarding the development of land and rights to property with ITC; (ii) a deed of constitution of reciprocal easement for the use of facilities and right of way easement #15 dated October 2002 with HDP Villas SE; and (iii) the right of usufruct constituted per deed number 37 dated July 19, 2005 with ITC.

On June 27, 2016, the Debtor filed a *Motion as to Assumption of Executory Contracts* pursuant to 11 U.S.C. §365(a) to assume five (5) property management agreements and for the court to take notice of Debtor's rights under the deed of usufruct, "…as to the ten (10) residences, and pursuant to the terms of said deed of usufruct, the Debtor in Possession, The Horned Dorset

-2-

Primavera as the usufructuary (Horned Dorset Primavera) may continue to operate the hotel and restaurant business at the real property and by the deed granted the usufruct for the exclusive use of the hotel and restaurant business which is at the level of the standards of quality and image which have to date been develop[ed] by the usufructuary, over the main Administration building wherein the reception and the restaurants are located, the structure which houses the reception for the villas and the administrative offices, the laundry, the gymnasium, the access path, the swimming pools and the gardens, as well as the easements which the parcel object of the public deed granting such rights. During the duration of the usufruct originally for thirty (30) years and while the usufructuary is in possession of the usufruct properties, the usufructuary shall have the sole and exclusive control of the operation of the restaurants and the hotel and those residences which have not been sold to third parties, the management, administration and development of said business without interference from the sole legal title owner" (Docket No. 202, pgs. 3-4). On July 15, 2016, PRCI filed its *Limited Objection to Motion as to Assumption of Executory Contracts* in which it limitedly objected to the assumption of the usufruct agreement without the pertinent reference that they are subject and subordinated to PRCI's mortgages (Docket No. 216). On July 19, 2016, the Debtor filed a *Motion to Quash PRCI Loans LLC's Intervention for Lack of Standing* because PRCI is neither a creditor or a party in interest and, thus, has no standing to object to the Debtor's assumptions of contracts to which PRCI is not a party. The Debtor also argued that, "[t]he fact that the Debtor assumes executory contracts to which PRCI is not a party of does not affect in any way any right which PRCI may hold. Additionally, the Debtor's right of usufruct, which is not an executory contract, is a lien duly recorded in the Registry of Property and as such it does not diminish, burdens or impairs whatever rights PRCI may claim as the assignee of Banco Popular de Puerto Rico." (Docket No. 218).

On July 22, 2016, the Debtor filed an adversary proceeding (Adversary proceeding No. 16-00156) against Inmobiliaria T& C Inc. for breach of contract and collection of monies. The Debtor/Plaintiff alleges that ITC has defaulted on two (2) promissory notes. The first promissory note became originally due and payable on July 19, 2006 and it was extended thereafter to July

-3-

19, 2010. ITC allegedly owes Plaintiff the principal sum of $4,060,000 plus default interest of 7% per annum, which as of May 31, 2016 amounts to $1,648,360.00, and whose default interest continues to accumulate at the rate of $778.63 per diem. The second promissory note became originally due and payable on July 19, 2009 and it was extended thereafter to July 19, 2010. ITC under the second promissory note allegedly owes Plaintiff/Debtor the principal amount of $4,000,000 plus $1,624,000 for default interests which continue to accrue at the rate of $767.12 per diem. The Debtor/Plaintiff requests in the alternative, that the Defendant render the amounts owed under the first promissory note and that title of all remaining real estate revert to the Debtor (Docket No. 221).

On September 7, 2016, the Debtor filed a *Motion for Entry of Order Granting Unopposed Motion to Quash Intervention* and thus deny PRCI the right to intervene in Debtor's request for assumption of executory contracts because PRCI failed to plead and address the Debtor's jurisdictional challenge as to its intervention (Docket No. 252). On September 26, 2016, PRCI filed its *Opposition to Motion for Entry of Order (Docket No. 252)* arguing that Debtor's motion for entry of order granting the unopposed motion to quash intervention is contrary to the basic notions of procedural economy given that this particular matter had been already scheduled for a hearing and the Debtor also filed an adversary proceeding against ITC that addresses the same issue raised by PRCI's limited objection to allegations that Debtor's usufruct rights have precedence over PRCI's mortgages (Docket No. 263). On November 17, 2016, the Debtor filed its *Reply to PRCI Loans LLC's Opposition to Motion for Entry of Order [Docket No. 263]* arguing that "PRCI's position is based on nothing more than a willful violation of the automatic stay, and PRCI only seeks to reap the benefits of unlawful endeavors" (Docket No. 277).

On December 1, 2016, PRCI filed an *Omnibus Sur-Reply to PRCI Loans LLC's Opposition to Motion for Entry of Order [Docket No. 277] and Reply to Opposition to Motion to Vacate (Adv. Docket No. 46)* requesting that the court deny any violation of the automatic stay and sanction Debtor for raising a frivolous and temerarious argument. PRCI argued the following: (i) neither the Defendant's petition nor PRCI's attempt to clarify that the usufruct agreement is

-4-

subordinated to PRCI's mortgage lien constitutes a violation of the automatic stay pursuant to 11 U.S.C. §362(a) and is therefore not void; (ii) the usufruct was subordinated to the mortgages in 2005; (iii) PRCI's property interest dates back to 2005, when Debtor consented to subordinating their usufruct to PRCI's predecessors mortgage liens in Deed No. 37, executed in Mayaguez, Puerto Rico, on July 19, 2005 (Docket No. 296). Therefore, actions taken before the filing of the petition may not be considered to have violated the automatic stay which is triggered by the filing of the petition.

On December 2, 2016, a hearing was held regarding the motion to assume executory contracts. After the clarification in open court, the court approved the motion for assumption of executory contracts (dkt# 202) (Docket No. 299).

On January 13, 2017, the Debtor filed a motion for contempt against ITC premised on ITC's post-petition written request to the Property Registrar of Aguadilla to alter the rank of the Debtor's recorded right of usufruct, in order for the Debtor's property interest (recorded right of usufruct) to be junior to two (2) mortgage liens that encumber the real property. The Debtor requests that the court determine that: (i) ITC's request to the Property Registrar was a willful violation of the automatic stay; (ii) that inscription twenty-one (21) recorded over parcel no. 3834 is void; (iii) issue a writ of execution to the Property Registrar to cancel inscription 21; and (iv) order ITC to pay the Debtor the reasonable legal fees to undue its unlawful action (Docket No. 308). On January 27, 2017, PRCI filed its response clarifying that even though the contempt motion is against ITC, PRCI is obligated to respond because the remedies sought in the motion seek to improperly subordinate PRCI's mortgage liens encumbering the real property at issue here to Debtor's usufruct liens. PRCI contends that, "… there is no question as to the fact that the mortgage liens had been recorded, perfected and given a superior ranking to the usufruct in 2005. However, it turns out that the Registrar made a clerical error whereby the mortgage rights appeared in the Registry as subordinate to the usufruct. Evidently, ITC discovered this clerical error and in 2015 moved the Registrar to clarify this clerical error. That is, no ranks were altered;

the Registrar simply clarified what was always an unquestionable fact—that the mortgage liens were recorded and perfected in a ranking superior to the usufruct liens" (Docket No. 310, pg. 2).

On January 31, 2107, the Debtor filed its *Reply to PRCI's Response to Motion for Civil Contempt* contending the following: (i) the Property Registrar's actions were not clerical; (ii) ITC moved the Property Registrar post-petition to alter the ranks of the liens encumbering the property; (iii) the Property Registrar's functions are not clerical inasmuch the Registrar has to exercise his or her judgment and discretion. State case law has established that the Registrar has an adjudicative function as that of a judge; (iv) even under the assumption that the Registrar made a mistake when it recorded the Debtor's usufruct as the priming lien, arguendo, the legal process to correct Registrar's mistakes requires a judicial resolution or the Registrar's judgment and discretion in conformity with Article 151 of the Property Registry and Mortgage Act of Puerto Rico, 30 L.P.R.A. §2502; (v) the Debtor in the deed of usufruct consented for mortgages to have preferential ranks over its usufruct only if such mortgages were used to finance future developments of the land encumbered with its usufruct; (vi) PRCI's first mortgage was executed to cover the sale of the property. The Debtor did not agree to subordinate its usufruct to such mortgage; (vii) pursuant to 11 U.S.C. §544 after the filing of the petition, the Horned Dorset became the debtor in possession which is considered a third party. As of the date of the filing of the petition, the Debtor's lien had a preferential rank. Thus, in order to alter the rank, ITC required the consent of the Debtor in possession and notice to creditors in this case. This consent was never requested much less granted; and (viii) even under the assumption that there was a mistake in the perfection of the mortgage liens due to their ranking order, ITC had thirty (30) days after the filing of the petition to perfect or make corrections to liens pursuant to 11 U.S.C. §§362(b)(3), 547(e)(2)(A). ITC moved the Property Registrar after such period had lapsed, on August 3, 2015. (Docket No. 312).

On February 3, 2017, ITC filed a *Request for Leave to Oppose Docket Entries 308 and 313 and Tendering Opposition* in which it contends that: (i) the language of paragraph eleven in the deed of usufruct is clear, the Debtor agreed to the mortgages having preferential rank over its

usufruct right. That was the intention and the agreement between the parties; (ii) the usufruct could have never had precedence over the first mortgage encumbering the realty because no bank would have financed the project without obtaining a first mortgage over the realty; and (iii) "Debtor does not get the point in relating the action by the Registrar to an 'enforcement' against the Debtor or an act to create, perfect or enforce against property of the estate. Debtor further misconstrues the facts and applicable law on accusing Inmobiliaria of violating the stay, when effectively, the Registrar corrected a clerical mistake" (Docket No. 316). On February 13, 2017, the Debtor filed its *Reply to Respondent's Opposition to Motion for Civil Contempt [Docket No. 316]* (Docket No. 319). On February 14, 2017, the Debtor filed its *Opposition to Respondent's Request for Leave to File and Leave to File Reply* (Docket No. 320).

On February 27, 2017, the Debtor filed its *Opposition to Inmobiliaria T&C, Inc.'s Request for Sanctions* under Rule 9011 and under 28 U.S.C. §1927 based upon the following: (i) ITC failed to abide by Rule 9011(c)(1)[1] which requires that any motion for sanctions under such rule

[1] Fed. R. Bankr. P. 9011(c)(1) provides:
    (1)  How initiated
        (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

        (B) On court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." Fed. R. Bankr. P. 9011(c)(1).

The court notes that if the request is initiated by a party, it must comply with the "safe harbor" provision that requires that the party serve the motion requesting sanctions to the other party before filing it with the court. The party being served the motion has twenty-one days to withdraw the challenged paper. The party requesting sanctions can only file the motion with the court if the other party does not withdraw the challenged paper within twenty days. See In re Torres Bonilla, 573 B.R. 368, 375 (Bankr. D.P.R. 2017). "This 'safe-harbor' provision is a mandatory procedural requisite. Motions made without compliance will not be heard, and sanctions resulting from such motions are subject to reversal. The fact that a court has granted leave to move for sanctions may not be used to circumvent the 'safe-harbor' prerequisite. The 'safe harbor' provision immunizes litigants from Rule 9011 sanction motions if they withdraw or correct the challenged paper before the motion is filed or presented. Failure to comply with the 21-day service requirement does not, however, shield parties and attorneys from all sanctions under Rule 9011, since the 'safe harbor' provision does not apply when the court imposes sanctions on its own initiative. Likewise, it has been held

-7-

be filed in a separate motion and served pursuant to Rule 7004; and (ii) ITC's request for sanctions is frivolous and baseless and in clear contravention to case law (Docket No. 328). On March 25, 2017, ITC filed its *Position Regarding Docket Entry 328* which is that ITC's reference to the statutory provisions under Rule 9011 and 28 U.S.C. §1927 led to a misunderstanding evinced by ITC's unfiled formal or independent request for sanctions. In addition, ITC contends that it did not violate the automatic stay because the Registrar corrected a clerical mistake. ITC's position is that the usufruct could have never had precedence over the first mortgage encumbering the realty because no bank would have financed the project (Docket No. 343).

On June 9, 2017, a hearing was held to consider the motion for civil contempt for violation of the automatic stay filed by the Debtor and the opposition and replies thereto. At the hearing the court stated that if the actions taken affect the Debtor's usufruct rights they may be void, assuming that it was a violation of the automatic stay, and even if not, the actions may still be void if they affect the rights of the Horned Dorset, because the Debtor did not appear and consent to that entry. The court clarified that ultimately if there was a violation of the automatic stay, the action is void. However, even if there was no violation of the automatic stay and the actions by ITC affect the rights of the Debtor, and the Debtor did not consent to the action that affected its rank, then it is a violation of section 2502 of title 30. The court granted ITC fourteen (14) days to submit a copy of any written request that was made by ITC.

On June 21, 2017, ITC filed a *Motion Submitting Document in Compliance with Order* to show that the "Instancia" was filed with the Property Registrar of Aguadilla to clarify the entries in the registry regarding the subject property (Docket No. 371). On July 14, 2017, the Debtor filed its *Response to Motion Submitting Document in Compliance with Court Order* arguing the following: (i) the document submitted by ITC is in the Spanish language in clear contravention of LBR 9070-1(c) and L. Civ. R. 5(g) as no English translation has been filed; (ii) pursuant to Articles 31.1 and 31.6 of the General Regulation for the Execution of the Mortgage Act

---

that, when sanctions are imposed under Code section 105 or pursuant to the court's inherent authority to impose sanctions, compliance with the safe harbor provision is not necessary." Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy §9011.05[1][b].

(Regulation No. 6297 as amended by Regulation No. 7896 of the Property Registry), upon the presentation of a document, the Property Registry's personnel issues a 'presentation receipt' signed and stamped with the official seal of the Property Registry. The copy submitted by ITC is neither stamped nor signed by the Property Registrar; (iii) the web printout is not an actual or official receipt and does not authenticate the document. Such document is a printout of the Property Registry's old "Agora" system which was only used to track the status of a presented document; (iv) the Registrar's actions were not clerical or *sua sponte*. ITC had to file a written "Instancia" accompanied by supporting documentation, which the Registrar reviewed and analyzed and deliberated upon whether to grant or deny ITC's request; (v) the material facts of the contested matter are not the Registrar's actions, but ITC's actions which were not clerical or automatic. ITC had knowledge of the filing of the Chapter 11 petition and moved the Registrar to alter the usufruct's rank; (vi) the "Instancia" contains factual conclusions which the Registrar unlawfully accepted as true without notifying the Debtor; (vii) pursuant to state law, the only two (2) ways to correct a Registrar's errors are with a court order or with the parties' consent, P.R. Laws Ann. T. 30 §2502; and (viii) according to ITC, the Debtor consented back in the year 2005 to have its usufruct subordinated to mortgage liens, thus ITC concludes that there was no violation of the automatic stay. Such legal theory is untenable pursuant to 11 U.S.C. §541, the debtor in possession is considered a separate entity. The Debtor was not notified by ITC or the Registrar. It was not until PRCI's intervention a year later, that the Debtor became aware that its usufruct rank had been altered (Docket No. 381).

On July 28, 2017, the Debtor and ITC filed a *Stipulation* in which ITC consented to the Debtor's request for a writ of execution to restore the *status quo* of the Debtor's right of usufruct as of the date of the filing of the petition, without prejudice of any interested party filing a motion from relief from the automatic stay to commence said procedure in state court. The Debtor in turn agreed to relinquish its claim against ITC for an alleged violation of the automatic stay and its request for sanctions, compensatory damages and attorney's fees (Docket No, 397). On August 17, 2017, PRCI filed its *Objection to Stipulation between Debtor and Inmobiliaria T & C, Inc. at*

*Docket No. 397* based upon the following: (i) the issuance of a writ of execution indicated in the Stipulation (for the Registrar to cancel the 21st inscription) is improper inasmuch as it would materially affect its rights as the holder of the mortgage liens, resulting in altering the current recorded rank and making the mortgage liens junior in rank to the usufruct; (ii) the Registrar made a mistake in the year 2008 when it recorded three (3) liens that had been filed/presented for recording at different times within the previous three years and recorded the usufruct deed first even though it was the last of the three deeds to be presented for filing violating the principle of *prior tempore potior iure*, first in time, first in right; (iii) the Registrar's action at issue was ministerial since it was a simple matter of verifying the chronological order of the dates of presentation of the usufruct lien and the mortgage liens and correcting the recorded ranks accordingly; (iv) the Debtor consented to the mortgage liens having a rank senior to the usufruct lien, thus no discretion or judgment was necessary and this was a ministerial and/or clerical act; (v) if the court were to find a violation of the automatic stay occurred, then PRCI requests that the court exercise its discretionary authority to retroactively lift the automatic stay for purposes of the correction of the recorded ranks, thus preserving rather than voiding the current correct ranks; and (vi) the issue of the correct rankings of the liens is key to the confirmation of any Chapter 11 plan and if the court voids the 21st inscription, then it would have to obtain a court order from the Puerto Rico Court of First Instance with this court's lifting the stay for that limited purpose (Docket No. 401).

On September 1, 2017, PRCI filed a *Motion Submitting Documents Re: Objection to Stipulation* in which it argued that it obtained an updated sworn title study that verifies that the usufruct at issue was filed and/or presented at the Registry of Property for recording and lien ranking over a year after the mortgage deeds in controversy (Docket No. 410). On September 1, 2017, the Debtor filed its *Response to PRCI's Objection to Stipulation and Opposition to Retroactive Lifting of the Stay* based upon the following: (i) PRCI lacks standing to object because its property interests will not be affected or impaired by the approval of the Stipulation. The approval of the Stipulation will return the *status quo* of the parties; (ii) "[t]he approval of the

-10-

Stipulation will only return the *status quo* of the parties' property rights at the time of the filing of the petition, and does not constitute an adjudication on the merits of whose lien should be in first rank;" (iii) the only issue in this contested matter is whether the automatic stay was breached; (iv) PRCI supports its position on four documents of which three are inadmissible because the same were not properly authenticated and constitute inadmissible hearsay; (v) the Registrar's actions were not ministerial. The Registrar was moved to act post-petition by ITC and the Registrar's actions were the result of a willful violation of the automatic stay and thus void; (vi) the "ministerial actions" is a narrow exception and the test is whether a 'layperson would have done the same.' "The test is whether the person had any sort of discretion; if the action was a 'rote function,' as other courts have called it." See In re Capgro Leasing Assocs., 169 Bankr. 305, 315-316 (Bankr. E.D.N.Y. 1994); (vii) under Puerto Rico case law, the Registrars have a quasi-judicial function, that entails document analysis and to make judgments regarding the documents presented for registration. See Nelly Santiago v. Estado Libre Asociado, 163 D.P.R. 149, 159 (2004); (viii) Puerto Rico's recording statute operates under a civil law principle called "principle of prayer" or "rogatory principle," meaning that property registrars cannot act on their own, they may only act when moved; (ix) the statutory process to correct Registrar's mistakes is neither clerical nor automatic. It requires a judicial resolution or the Registrar's judgment and discretion pursuant to Article 151 of the Property Registry and Mortgage Act of Puerto Rico, P.R. Laws Ann. T. 30 §2502; (x) PRCI lacks standing to request retroactive relief from the automatic stay on behalf of a third party, ITC. Retroactive relief is an extraordinary remedy for which cause has not been shown. Proper notice and procedure has not been given or followed; and (xi) PRCI seeks to reap the benefits of this unlawful act and has harassed the Debtor in the process for the sake of its procedural convenience (Docket No. 412).

On September 13, 2017, the Debtor filed its *Response to PRCI's Motion Submitting Documents* in which it objects to the two (2) documents submitted by PRCI arguing that both are inadmissible pursuant to Federal Rules of Evidence. The Debtor objects to the sworn title study because it is hearsay and is precluded by Fed. R. Evid. 802. The only person with legal capacity

-11-

to attest as to the contents of the Registry is the Property Registrar through certifications. The Instancia's authenticity has not been established in conformity with the Federal Rules of Evidence (Docket No. 415).

On September 15, 2017, PRCI filed its *Reply to Response to PRCI's Objection to Stipulation and Opposition to Retroactive Lifting of Stay (Docket 412)* arguing the following: (i) this court already ruled in the context of adversary proceeding number 16-00156 that PRCI has standing to object to any attempt by Debtor to give inferior rank to the Deed of Mortgage which secures part of ITC's indebtedness to PRCI. PRCI has standing to object to the Stipulation because the remedy sought in both instances is the same, stripping away PRCI's Deed of Mortgages' superior rank over the usufruct deed; (ii) any action removing the deed of mortgage's superior rank will harm PRCI; (iii) if the remedy requested in the Stipulation may be overturned by the adversary proceeding or a state court judgment, the court should deny the remedy requested in the Stipulation or stay its ruling until the adversary or a state court proceeding is completed; (iv) "[b]ecause the deed of mortgage has and will unquestionably continue to have superior rank to the usufruct deed, once the mortgages are executed, the usufruct deed will be cancelled as a junior lien;" (v) it is undisputed that the usufruct deed was presented at the Registry of Property twenty-two (22) months after the deed of mortgage. See Sworn Statement of Annie R. Lopez Olivera (Docket No. 410-1); (vi) sworn title searches are admissible in evidence and are used regularly in lieu of a Registrar's certification; (vii) the usufruct deed was never entitled to have a superior rank and it was presented subsequent to the deed of mortgage, this was a mistake that needed to be corrected by the Property Registrar; and (viii) the retroactive lifting of the automatic stay is justified to preserve the lawful rank of the liens and to avoid future costly and time consuming litigation which will result in the current *status quo* (Docket No. 417).

On October 26, 2017, the Debtor filed its *Sur-Reply to PRCI's Reply to Debtor's Response to Objection to Stipulation* contending that: (i) PRCI waived the argument as to whether it has standing to intervene in the violation of the automatic stay controversy when it remained silent after the Court's ruling that the issue of the violation of the automatic stay had to be presented in

the lead case; (ii) "[i]f PRCI's was truly concern[ed] with procedural economy, it should have raised such argument at the beginning of the contested matter, and not nine (9) months after, when the Debtor and ITC reached a settlement agreement;" (iii) the only controversy being litigated in this contested matter is whether ITC's actions constituted a violation of the automatic stay. Regardless of whether or not the Stipulation is approved, PRCI will have the same remedies, thus PRCI's argument of "procedural economy" should be disregarded; (iv) "[i]n fact, PRCI['s] rights are unaffected by the Stipulation in this contested matter. On April 7, 2011, that is four years prior to the filing of the present Chapter 11 petition, ITC and Banco Popular (PRCI's predecessor), executed a judgment by consent document in which they acknowledged that the mortgage liens were subordinated to the Debtor's usufruct, that is inscriptions 17th and 18th. [Exhibit 1];" (v) The court allowed PRCI to intervene in the adversary proceeding to defend the rank of its liens. PRCI is not a creditor of the Debtor and there is no relationship between the Debtor and PRCI, therefore PRCI does not have a right to be heard on plan confirmation issues; and (vi) title searches are inadmissible as hearsay due to a party's constitutional right to cross examine the evidence (Docket No. 427).

On October 30, 2017, PRCI filed a *Motion to Strike and for the Imposition of Sanctions* based upon Debtor's representation to this Court that, "ITC and Banco Popular (PRCI's predecessor) executed a judgment by consent in which they acknowledge that the mortgage liens were subordinated to the Debtor's usufruct" is utterly false. PRCI states that no such acknowledgment is contained in the Consent Judgment. The usufruct is not even mentioned in the consent judgment. Therefore, the Sur-reply at Docket No. 427 should be stricken from the record (Docket No. 432). On October 31, 2017, the Court ordered the Debtor to state its position within twenty-one days as to PRCI's motion to strike and for the imposition of sanctions (Docket No. 433). On November 24, 2017, the Debtor filed its *Opposition to PRCI's 'Motion to Strike and for the Imposition of Sanctions'* premised upon the following: (i) in the state court document signed by Banco Popular de Puerto Rico (PRCI's predecessor) and ITC for the foreclosure of the mortgage liens in controversy, BPPR and ITC specifically proffered to the state court that the

-13-

mortgage liens had a 17th and the 18th rank in the Property Registry; (ii) "[a]s it can be seen, BPPR, PRCI's assignor, specifically acknowledge[d] in state court foreclosure proceeding that its liens were 17th and 18th in rank. At that time the usufruct was 16th in rank. Therefore, BPPR in such document acknowledged its rightful ranks as 17th and 18th, under inscription 16th, the Debtor's right of usufruct. The fact that the usufruct is not specifically mentioned is unnecessary for such acknowledgement. The quoted parts of the documents contain specific inscription details of liens at the Property Registry. These details could have only been obtained through a title study or a Registrar Certification which would reflect the Debtor's right of usufruct in the 16th inscription;" (iii) "…at the time BPPR filed its complaint for the foreclosure of its liens, the Debtor's usufruct was recorded as the 16th inscription, and the mortgages had junior ranks as 17th and 18th inscriptions, respectively. Therefore, in accordance with Article 104 of the Mortgage Act, the rank of the liens was presumed valid and correct. If BPPR believed that there was a mistake in the recording of liens, BPPR could and should have requested the 'correction' of the ranks prior or jointly with the filing of the foreclosure complaint. BPPR, however, did not. By failing to join the Debtor in such foreclosure proceeding, PRCI's assignor tacitly acknowledged and acquiesced to its 17th and 18th rank at that moment in time, which was beneath the Debtor's usufruct;" (iv) PRCI's request for sanctions is a litigation strategy to intimidate the Debtor; (v) sanctions should be denied for failure to comply with Fed. R. Bankr. P. 9011(c)(1)(A); and (vi) in this case the applicable subdivision under Rule 9011 is the frivolous clauses because PRCI claims that Debtor's sur-reply was frivolous and utterly false. PRCI moves for sanctions because it disagrees with the Debtor's conclusion regarding court statements made by PRCI's predecessor and ITC. However, this is not grounds for sanctions (Docket No. 439).

On November 28, 2017, the Debtor filed a *Motion to Inform and for Entry of Order* contending that the Stipulation should be approved due to the following: (i) the merits of which the lien should be ultimately recorded in first rank is a non-core matter being litigated in the adversary proceeding 16-00156; (ii) this contested matter pertains to whether ITC breached the automatic stay and if so the undue effects of such breach and returning the *status quo* of the

-14-

usufruct in the Property Registry; and (iii) if the Stipulation is denied, then the parties would have to continue parallel litigation in this contested matter and in the adversary proceeding as to the same facts (Docket No. 442). On December 8, 2017, PRCI filed an *Omnibus Response to Debtor Motions Regarding Proposed Stipulation* in which it argues that: (i) the Debtor's argument as to the "approval of the Stipulation will only be a final order regarding the violation of the automatic stay and not an adjudication on the rank of the liens" does not hold. Contrary to Debtor's position, the Stipulation is an adjudication on the rank of the liens, because pursuant to the same, the Debtor and ITC request that the court enter a writ of execution that would require the Registrar to alter the liens as currently recorded; (ii) contrary to the Debtor's position, the Stipulation does have an effect on Debtor's reorganization because with PRCI's mortgage liens being senior to the Debtor's usufruct lien, the usufruct is excluded from Debtor's estate because PRCI has a right to execute the judgment in conformity with the mortgage liens over the property and have the property be sold at public auction and be paid the monies owed under the ITC loans; and (iii) debtor's chapter 11 plan of reorganization is based on the incorrect premise that its property interest (the usufruct) will be part of the estate. The issue as to the rank of the liens and thus, whether or not the usufruct is part of the estate bears substantially on plan confirmation (Docket No. 447).

Legal Analysis and Discussion

PRCI argues that it has standing to object to the Stipulation filed between the Debtor and ITC because it will affect its property rights by subordinating PRCI's mortgage liens superior rank over the usufruct deed and thus harm PRCI. 11 U.S.C. §1109(b) provides:

> "[a] party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. §1109(b).

A "party in interest" is not limited to the persons that are included in section 1109(b), meaning that a person that is not included in 11 U.S.C.§1109(b) may qualify as a "party in

-15-

interest" if the person has a significant legal stake in the outcome of the case. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1109.02[1] (16th ed. 2018). A "party in interest" pursuant to this section comprises "… anyone holding a direct financial outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interests." Id. at ¶1109.01[1] (16th ed. 2018). Therefore, a person or entity that does not have a legal or financial stake in the case is generally excluded from the definition of "party in interest."

Section 1109(b) provides due process safeguards because it "… guarantees that every person with a direct stake in the proceedings has an opportunity to be heard with respect to any issue in the case that is pertinent to his or her interest, even though the person may ultimately be required to accept a disposition that he or she does not prefer." Id. at ¶1109.02[3][b].  Moreover, principles of standing may limit the scope of section 1109(b). "In general, a 'party in interest' in a 'case' may be precluded from participating in a particular 'proceeding' for lack of standing if he or she has no cognizable interest (whether directly or indirectly) in the outcome of the proceeding." Id. at ¶1109.01[3].  In the context of section 1109(b), the doctrine of standing encompasses two (2) inquiries; namely; (i) whether participation of any party comports with the limitations of the case or controversy requirement of Article III of the Constitution; and (ii) whether the interests of a party lie within the "zone of interests" protected by the specific statute or legal rule pertinent in the given proceeding. Id. at ¶1109.04[4][4]. The case or controversy requirement within the chapter 11 context is satisfied if the participant holds a financial stake in the outcome of a proceeding to the extent that the participant has an incentive to partake in an adversarial manner to protect his or her interest. Id. at ¶1109.04[4][a]. In the chapter 11 context regarding the "zone of interests" test there are at least two statutes bearing on standing; namely; (i) the substantive statute involved in the proceeding and section 1109(b). Id. at ¶1109.04[4][b][i].

-16-

"The best answer to this question is supplied by the Court of Appeals for the Seventh Circuit:

> '[W]e do not think that this section [section 1109(b)] was intended to waive other limitations on standing, such as that the claimant be within the class of intended beneficiaries of the statute that he is relying on for this claim, although a literal reading of section 1109(b) would support such an interpretation. We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding *is entitled to assert that interest with respect to any issue to which it pertains,* thus making explicit what is implicit in an *in rem* proceeding – that everyone with a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims.'

As interpreted by the Seventh Circuit, the applicability of section 1109(b) thus becomes a question of whether the particular 'issues' under consideration are pertinent to the interests of the 'party in interest' seeking to litigate them." Id. at ¶ 1109.04[4][i].

The court finds that PRCI is a party interest with a significant stake in the outcome of this contested matter because its property rights may be affected. The court concludes that PRCI has standing and must be afforded due process to object and be heard by this court regarding the Stipulation filed because its property rights are under direct attack and will be directly affected if the Stipulation is granted.

The critical issue before the court is whether ITC violated the automatic stay by filing the "Instancia" with the Aguadilla Property Registrar. The issue hinges on the contention that the Registrar's actions were ministerial and or clerical in nature. It is an uncontested fact that pre-petition, irrespective of the parties' intentions, the Debtor's right of usufruct (lien) had a preferential rank to the mortgages. The Debtor's right of usufruct was recorded in the Property Registry as the 16th inscription (registration/ "asiento") encumbering the real property. The pre-petition mortgage liens were recorded in the Property Registry as the 17th and 18th inscription over the real property. However, on August 3, 2015, ITC filed a post-petition "Instancia" with the Aguadilla Property Registrar intended to harmonize registered documents ("armonizar

-17-

documentos inscritos") which resulted in the Debtor's right of usufruct (lien) to be subordinated (inferior rank) to the mortgage deeds (Docket Nos. 371, 397).

The first step is to determine that the Debtor's right of usufruct constitutes property of the estate under 11 U.S.C. §541(a)(1). Section 541(a) defines in pertinent part property of the estate as:

> "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1).

Section 541(a)(1)'s provision that the debtor's estate shall include 'all legal or equitable interests of the debtor in property as of the commencement of the case' is extremely broad and includes all rights and interests of the debtor in real property.  See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy §541.04.  It is a well-established principle, (the "Butner Principle") in Bankruptcy Law that property interests are determined pursuant to state law, unless a particular federal interest requires a different result. See Butner v. U.S., 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-918, 59 L. Ed. 2d 136, 141-142 (1979), quoting Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L. Ed. 2d 323, 327 (1961) ("…Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the

happenstance of bankruptcy'"). Thus, the pertinent state law must be analyzed to determine whether the right of usufruct is a legal interest of the debtor in property of the estate.

Debtor's Usufruct Right

Debtor's real right of usufruct was constituted by the Deed of Usufruct dated July 19, 2005 (Docket No. 202). The Deed of Usufruct states that the property was acquired by the Sole Legal Title Owner, ITC, from the Usufructuary, (the Debtor) through a Sale and Purchase with a Deferred Price, according to public deed number thirty-six (36) executed on July 19, 2005 (Docket No. 202-7, pgs. 2-3). The Third paragraph of the Deed of Usufruct reads in pertinent part as follows:

> "[i]t is the desire of the appearing parties herein that The Usufructuary may continue to operate the hotel and restaurants business at the real property which is the object of this public deed. As such, and considering that The Usufructuary credits to the Sole Legal Title Owner the amount of One Million Dollars ($1,000,000) to the sale and purchase price, the Sole Legal Title Owner, by this act confers on The Usufructuary, an usufruct for the exclusive use of a hotel and restaurants business which is at the level of the standards of quality and image which have to date been developed by the Usufructuary" (Docket No. 202-7, pg. 3)

Moreover, the Usufruct Deed states in the fifth clause that the usufruct is established for the period of thirty (30) years starting from the date of the execution of the deed. The parties agree that the usufruct is a type of lien. The Debtor contends that the right of usufruct is the civil law equivalent to the common law "life estate" (Docket No. 381, pg. 10, fn. 8). The usufruct is a juridical figure that is governed by the Puerto Rico Civil Code (hereinafter referred to as the "Civil Code").

Article 396 of the Civil Code defines the juridical figure of a usufruct in the following manner:

> "[u]sufruct is the right to enjoy a thing owned by another person and to receive all the products, utilities and advantages produced thereby, under the obligation of preserving its form and substance, unless the deed constituting such usufruct of the law otherwise decree." 31 L.P.R.A. §1501.

-19-

Article 397 of the Civil Code provides:

> "[u]sufruct is constituted by law, by the wish of the parties expressed in instruments *inter vivos*, or by last will, and by prescription." 31 L.P.R.A. §1502.

Article 398 of the Civil Code states:

> "[u]sufruct may be constituted on the whole or on part of the fruits of a thing, in favor of one or several persons, simultaneously or successively, and in any case from or to a certain day, with or without conditions. It may also be constituted on a right, provided the same is not absolutely personal or transferable." 31 L.P.R.A. §1503.

Article 399 of the Civil Code provides:

> "[t]he rights and obligations of the usufructuary shall be those stated in the deed establishing the usufruct; in default of such deed, or because of its incompleteness, the provisions contained in the two following chapters shall be observed." 31 L.P.R.A. §1504.

Article 443 of the Civil Code provides:

> "[t]he usufruct cannot be established in favour of a town, corporation or association for more than thirty years. If it has been established and before the said period the town becomes deserted or the corporation or association is dissolved, the usufruct shall be extinguished by reason thereof." 31 L.P.R.A. §1573.

Spanish Commentator Manresa opines that a usufruct is essentially a lien on another's property. "We must not wonder, therefore, that our code, breaking with our domestic precedents, has fully discarded the great error of considering usufruct as a personal servitude. Usufruct is a servitude only in one sense: As a lien on another's property, neither more nor less than an annuity (censo) or a mortgage." See Guzmán Rodríguez v. Central San José, 60 P.R.R. 377, 383, 60 D.P.R. 386, 392 (1942) citing José María Manresa Y Navarro, 4 Comentarios al Código Civil, 351.

The court concludes based on the above cited provisions of the Civil Code that a usufruct is a type of lien. The term "lien" is defined in section 101(37) as "… a charge against or interest

in property to secure payment of a debt or performance of an obligation" 11 U.S.C. §101(37). Therefore, the Debtor is a holder of a usufruct, which is a type of lien and has a legal interest in real property.  See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶541.04[4] (16th ed. 2018) ("It is obvious under the terms of section 541(a)(1) that any rights the debtor may have as the holder of a mortgage in realty, i.e., as a mortgagee, will become property of the estate. Thus, all right, title, and interest as to a debtor's statutory materialmen's lien will become estate property which the trustee may assign and sell the same as any other asset of the estate. The estate, of course, acquires no better right that the debtor in this regard. If the debtor's lien is junior, such will be the limit of the interest in the property included in the estate"). Consequently, the court finds that the Debtor's right of usufruct is property of the estate.

<u>Violation of the Automatic Stay pursuant to 11 U.S.C. §362(a)(2), (5)</u>

The Debtor alleges that ITC violated the automatic stay pursuant to 11 U.S.C. §362(a)(2) and (5) when it prompted the Property Registrar post-petition by filing an Instancia (document) to subordinate the Debtor's right of usufruct (a property interest) to PRCI's mortgage liens. The Debtor argues that the subordination of the usufruct deed is void because it constitutes an act against property of the estate. PRCI's objection to the Stipulation between Debtor and ITC is based upon the argument that the Registrar's action was ministerial since it was a simple matter of verifying the chronological order of the dates of presentation of the usufruct lien and the mortgage liens and correcting the recorded ranks accordingly. The Registrar allegedly made a mistake in the year 2008 when it recorded three (3) liens that had been filed/presented for recording at different times within the previous three years and recorded the usufruct deed first even though it was the last of the three deeds to be presented for filing violating the principle of *prior tempore potior iure*, first in time, first in right. Moreover, PRCI contends that the Debtor consented to the mortgage liens having a rank senior to the usufruct lien, thus no discretion or judgment was necessary, and this was a ministerial and/or clerical act.

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997).  The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2018). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

Moreover, "[u]nless it is extended by the court, however, as a general rule the stay only protects, by its terms, actions against the debtor, the debtor's property, or property of the estate. It does not, for example, protect nonparties, such as, for example, guarantors of debtor's debt (except in Chapters 12 and 13 where there is a codebtor stay); officers, directors, or shareholders of a corporate debtor, partners of a partnership that is in bankruptcy (or the reverse); or a nonfiling spouse of a debtor."  Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7:4 Vol. 1 (5th ed. 2018), pgs. 1535-1536.

The First Circuit in Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F. 3d 367, 374 (1st Cir. 2011) stated that a violation is deemed "willful:" "… if a 'creditor's conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the

bankruptcy case.'" In re Laboy, 647 F. 3d. at 374 citing In re McMullen, 386 F. 3d 320, 330 (1st Cir. 2004).

Section 362(a)(2) operates as a stay regarding "… the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the cause under this title." 11 U.S.C. §362(a)(2). "This would include, for example, garnishment, levy, or execution, post judgment attachment, and the pursuit of proceedings supplemental to the entry of judgment." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.6 Vol. 1 (5th ed. 2018), pg. 1554. "Also stayed are levy and execution, pursuant to a prepetition judgment, against the property of the estate and against property of the debtor. This stay protects exempt assets that cease to be property of the estate and assets acquired after the commencement of the case." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.03[4] (16th ed. 2018). "In this regard, 'property of the estate' is expansively defined to include all legal and equitable interests of the debtor in property as of the commencement of the case." Id. at ¶362.03[4].

Section 362(a)(4) operates as a stay regarding "… any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. §362(a)(4). Property of the estate is broadly construed pursuant to 11 U.S.C. §541. The term "lien" is defined pursuant to section 101(37) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. §101(37). "This definition includes liens obtained through judicial process, statutory liens, consensual liens (such as, real estate mortgages or agreed-upon security agreements), or any inchoate charge against property of the estate." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.8 Vol. 1 (5th ed. 2018), pg. 1578. "Section 362(a)(4) covers both judicial and nonjudicial actions against property of the estate. A wide variety of actions are stayed automatically, including, by way of illustration, judicial and private foreclosure and self-help remedies against collateral, such as by repossession or by notification of account debtors. Each act in the foreclosure process is stayed" Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.03[6][b] (16th ed. 2018). "In

-23-

general, the nondebtor party seeking to take action against the debtor or its property is well advised to assume that the stay applies and seek relief by appropriate proceedings in the bankruptcy court." Id. at ¶362.03[6][b]. "Moreover, courts have held that a creditor does not violate §362(a)(4) by extending, continuing, or renewing a judgment lien, mortgage lien, or similar, because by doing so, the creditor is merely maintaining the *status quo*." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.8, pg. 1581 referencing In re 229 Main Street Ltd. Partnership, 262 F. 3d 1, 38 (1st Cir. 2001) (explaining that the automatic stay is not applicable to acts to maintain or continue perfection of a lien).  "However, section 362(b)(3)[2], an exception to the automatic stay provisions and thus, permits perfection of an interest in property to the extent that the trustee's rights and powers are subject to perfection under 546(b) or to the extent that perfection is achieved within the 30-day grace period set forth in section 547(e)(2)(A)."  Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.03[6][a] (16th ed. 2018).

Unlike section 362(a)(4), section 362(a)(5) stays "… any act to create, perfect, or enforce against property of the debtor" as opposed to property of the estate. This provision protects the debtor's property. See Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.9 Vol. 1 (5th ed. 2018), pg. 1583 ("This provision of the automatic stay thus protects the debtor's property, as, for example, property in an enforceable spendthrift trust under which the debtor is a beneficiary; post-petition earnings in a Chapter 7 individual debtor's case; property that was abandoned to the debtor by the trustee; or property that is exempted").

Therefore, an action that is filed after the filing of a bankruptcy petition aimed at affecting the property rights of a Debtor or the estate constitutes a violation of the automatic stay provision

---

[2] Section 362(b)(3) reads in pertinent part, "[t]he filing of a petition under section 301, 302, or 303 of this title… does not operate as a stay—
(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title." 11 U.S.C. §362(b)(3).

362(a); unless there is an exception under section 362(a). If none exists, there is a violation.

Ministerial Act Exception

The ministerial act exception to the automatic stay has generally been employed as an exception to actions stayed by section 362(a)(1) in which there are pending state court proceedings. The ministerial act exception under 11 U.S.C. §362(a)(1) is not limited to lawsuits; "it covers 'any judicial, administrative, or other action or proceeding.'"  Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.5 Vol. 1 (5th ed. 2018), pgs. 1544-1545 citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41 (making clear that Congress intended this subsection §362 (a) to apply to a variety of informal proceedings). However, section 362(a)(1) only applies to actions against a debtor, which is determined by the debtor's status at the time of the original proceeding. Id. at §7.5, pg. 1544. The First Circuit in Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 974 (1st Cir. 1997) analyzed the term "ministerial act" as follows:

> "[a] ministerial act is one that is essentially clerical in nature. See Black's Law Dictionary 996 (6th ed. 1990). Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial. See United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 75 L. Ed. 1148, 51 S. Ct. 502 (1931) (indicating that a duty is ministerial if 'the obligation to act [is] peremptory, and plainly defined'); Neal v. Regan, 587 F. Supp. 1558, 1562 (N.D. Ind. 1984) (describing a ministerial act as 'one which 'the law prescribes and defines... with such precision as to leave nothing to the exercise of discretion or judgment) (citation omitted). Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment. See Black's Law Dictionary, supra, at 846

> Virtually by definition, a judicial proceeding does not conclude until the judicial function is completed, that is, until the judicial decision is made. See, e.g., Bidermann, 21 F. 3d at 528 (holding that the judicial function is completed 'at the moment the judge directs entry of judgment'). Frequently, routine scrivening, such as recordation or entry on the docket, follows on the heels of a judicial decision. Such actions—taken in obedience to the judge's peremptory instructions or other otherwise precisely defined and nondiscretionary—are ministerial and, consequently, do not themselves violate the automatic stay even if undertaken after an affected party files for bankruptcy. See, e.g., Knightsbridge Dev., 884 F. 2d at 148 (suggesting that merely recording a previously decided award would be a

-25-

'clerical act' and therefore would not infract the automatic stay); In re Capgro Leasing Assocs., 169 Bankr. 305, 315-16 (Bankr. E.D.N.Y. 1994) (stating that 'entry of judgment will constitute a 'ministerial act' where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment upon the court's docket'). By the same token, however, acts undertaken in the course of carrying out the core judicial function are not ministerial and, if essayed after bankruptcy filing, will be deemed to violate the automatic stay." Id. at 974.

The applicability of the automatic stay is the general rule. Ministerial actions are a narrow exception. "Given the importance of the automatic stay, the concept of purely ministerial acts should be narrowly construed to protect only those acts that are clerical in nature and do not involve the exercise of any discretion or judgment. Thus, entry by the clerk of a judgment previously ordered by the court may be a purely ministerial act which may be taken without violating the stay, while the court's ordering entry of a judgment involves a judicial function that goes beyond a merely ministerial act and, thus, would be subject to the stay. Even the entry of a judgment on the judgment docket may be stayed to the extent that such entry creates a judgment lien on property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.03[3][e] (16th ed. 2018).

The next step in our analysis is to determine whether the Property Registrar's actions after ITC submitted the "Instancia" constituted a ministerial act or was the Property Registrar's act of altering the ranking of the usufruct lien to be subordinate to PRCI's mortgage liens require the exercise of any discretion or judgment. To determine this issue, the court will delve into the responsibilities and authorities of the Property Registrar pursuant to the Puerto Rico Mortgage Law. The court notes that the Mortgage and Property Registry Act of 1979, 30 L.P.R.A. §§2001 et seq., was superseded on December 8, 2015 by Act Number 210 which is titled, "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico" (Real Property Registry Act of the Commonwealth of Puerto Rico) (translation ours)[3]. Article 322 of the Real

---

[3] No official translation in the English language of this Act is available as of the entry of this Opinion and Order. Article 322 of the Real Property Registry Act of the Commonwealth of Puerto Rico ("Real Property Registry Act") establishes that this act shall take effect ninety (90) days after its approval.

-26-

Property Registry Act of the Commonwealth of Puerto Rico establishes that this new law would become effective ninety (90) days after its approval, that is on March 7, 2016.

The court notes that it was on August 3, 2015 when ITC filed the post-petition "Instancia" with the Aguadilla Property Registrar. Thus, the submission of the 'Instancia" was prior to the enactment of the new mortgage law. However, the Debtor provided a certification[4] from the Property Registrar dated August 12, 2016, (Docket No. 328-5) that evinces that on such date the rank of the deed of usufruct had not yet been subordinated to the rank of the mortgages. The court concludes that the Property Registrar evaluated the Instancia and proceeded to alter the rank of the usufruct and the mortgage deeds after August 2016, and, thus, the applicable law is the Real Property Registry Act of the Commonwealth of Puerto Rico, 30 L.P.R.A. §6001 *et seq.* ("Real Property Registry Act").

Article 229 of the Real Property Registry Act provides:

"[r]egistrars shall have the responsibility of passing judgment on the legality of all kinds of documents by virtue of which an entry is requested. Said judgment shall include the extrinsic forms of the documents presented, the competence of the grantors and the validity of the transactions and contracts contained in these documents. Registrars shall base their judgments on the transactions and contracts to be recorded, on the documents presented, the existing registry entries and the statutes.

When judging documents subject to registration, Registrars are not empowered to evaluate the legality of the judgments or entries made by themselves or by their predecessors. These

[4] Article 218 of the Real Property Registry Act provides that the certifications issued by the Registrars are public documents and as such may be considered evidence in their own right. Article 218 in the Spanish language provides in its entirety:
"Las certificaciones manifestarán el contenido de los asientos que constan en el Registro.
Los Registradores son los únicos funcionarios que tienen la facultad de certificar el contenido de los asientos registrales.
Las certificaciones así expedidas son documentos públicos que dan fe por sí mismos y serán admitidos como prueba ante los tribunales de justicia con arreglo a lo dispuesto en las Reglas de Evidencia vigentes." 30 L.P.R.A. §6361.

Article 220 of the Real Property Registry Act provides that the certifications shall comprise of all the valid entries in the respective period including the entries appearing in the registry of attachments.  Article 220 in the Spanish language provides in its entirety:
"Las certificaciones comprenderán todos los asientos vigentes en el período respective. En cuanto a la certificación en relación también se hará referencia a los asientos vigentes contenidos en el libro único de embargos." 30 L.P.R.A. §6363.

entries, as well as the transactions recorded, must be deemed valid until the courts declare them null and void.

With respect to documents issued by Judicial Authority, said judgment shall be limited to:

(1) The jurisdiction and competence of the court; the nature and effects of the decision handed down if it was rendered in the corresponding trial; and if the procedures and precepts essential to its validity were observed;
(2) the extrinsic reliability of the documents presented, and
(3) the Registry data.

Where administrative documents are concerned, the judgment shall refer, insofar as it is pertinent, to the particulars set forth in the preceding paragraph.

The Registrar may demand that complementary documents needed for a proper judgment be furnished, whether they be notarial, judicial or administrative, except those documents which give faith of certain faculties. In these cases, the authorizing notary may attest under his or her signature, stamp and notarial faith that he or she had the document before him or her and that it abides with all the formalities of the law." 30 L.P.R.A. §6381.

The court notes that Article 229 reads very similar as its predecessor Article 64, 30 L.P.R.A. §2267[5]. This is important to note because which law is applicable does not affect the analysis of whether the Registrar's actions were ministerial/clerical in nature, a determination

---

[5]Article 64 under the prior mortgage law provided:

"[r]egistrars shall have the responsibility of passing judgment on the legality of all kinds of documents by virtue of which an entry is requested. Said judgment shall include the extrinsic forms of the documents presented, the competence of the grantors and the validity of the transactions and contracts contained in these documents. Registrars shall base their judgments on the transactions and contracts to be recorded, on the documents presented, the existing registry entries and the statutes.

When judging documents subject to registration, Registrars are not empowered to evaluate the legality of the judgments or entries made by themselves or by their predecessors. These entries, as well as the transactions recorded, must be deemed valid until the courts declare them null and void.

With respect to documents issued by Judicial Authority, said judgment shall be limited to:

(1) The jurisdiction and competence of the court; the nature and effects of the decision handed down if it was rendered in the corresponding trial; and if the procedures and precepts essential to its validity were observed;
(2) the extrinsic reliability of the documents presented, and
(3) the Registry data.

Where administrative documents are concerned, the judgment shall refer, insofar as it is pertinent, to the particulars set forth in the preceding paragraph.
In all cases, the Registrar may demand that complementary documents needed for a proper judgment be furnished, whether they be notarial, judicial or administrative." 30 L.P.R.A. §2267.

-28-

which is directly tied to whether ITC violated the automatic stay when it presented the "Instancia" (document) to the Property Registrar on August 3, 2015, that is prior to the enactment of the new mortgage law. Moreover, article 76.1 of Regulation 2674[6] which was enacted on June 30, 1980 is very similar to Rule 229.1 of Regulation 8814[7] which was enacted on September 14, 2016.

Article 230[8] of the Real Property Registry Act provides:

"[t]he judgment made by the Registrar of the documents presented shall be for the sole purpose of granting or refusing the registration, notation, note or cancellation requested, and shall not prevent or prejudge the legal proceedings which may be filed later on in court concerning the validity of the documents judged, with the Registrar's having to abide by whatever is decided." 30 L.P.R.A. §6382

The court notes that Article 230 is also similar as its predecessor Article 67, 30 L.P.R.A.§2270[9].

Article 232 of the Real Property Registry Act provides:

"[t]he Registrar shall have autonomy in his judging powers and there shall be only one lawful recourse against his judgment, which is established in this law, so that the courts

[6] Regulation 2674 in the Spanish language is titled, "Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad." Article 76.1 states in the Spanish language the following: "[e]l Registrador considerará, conforme a lo prescrito en el artículo 64 de la Ley como faltas de legalidad de los documentos cuya registración se solicite, todas las que afecten, tanto a las formas de los documentos como a la eficacia de las obligaciones o derechos contenidos en los mismos, siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos."

[7] Regulation 8814 in the Spanish language is titled, "Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria." Rule 229.1 provides in the Spansih language the following: "[e]l Registrador considerará como faltas de legalidad que afecten la forma de los documentos y la eficacia de las obligaciones o derechos contenidos en los mismos, siempre que resulten de su texto o puedan conocerse por su simple inspección."

[8] Article 230of the Real Property Registry Act states the following in the Spanish language:
"La calificación del Registrador será a los únicos efectos de extender o denegar la inscripción, anotación, nota o cancelación solicitada, y no impedirá ni prejuzgará el juicio que pueda seguirse en los tribunales sobre la validez de los documentos calificados, debiendo atenerse el Registrador a lo que aquel resuelva." 30 L.P.R.A. §6382.

[9] Article 67 under the prior mortgage law provided:
"[t]he judgment made by the Registrar of the documents presented shall be for the sole purpose of granting or refusing the registration, notation, note or cancellation requested, and shall not prevent or prejudge the legal proceedings which may be filed later on in court concerning the validity of the documents judged, with the Registrar's having to abide by whatever is decided." 30 L.P.R.A. §2270.

-29-

or other authorities cannot, in any way, oblige or prevent a Registrar from performing any function pertaining to the registration process. In the same manner, the courts or other authorities may not request the Registrars to testify as to the validity or nullity of entries or regarding the judgment of documents or about any other matter that may be object of a registry certification issued by the Registrar in conformity with this law. To these effects, they shall remit exclusively to the registry certifications that are issued in conformity with this law.

The autonomy of the Registrar does not extend to his or her duty to abide by the norms and administrative guidelines rendered by the Secretary of Justice and/or the Administrative Director of the Registry" 30 L.P.R.A. §6384[10].

Article 232 compares to Article 65 of the prior mortgage law, 30 L.P.R.A. 2268[11].

The nature, extent and scope of the Registrar's faculty to pass upon documents has been discussed in different scenarios and types of controversies before the Supreme Court of Puerto Rico. The court again notes that the analysis regarding the nature and extent of the function of the Property Registrar remains the same under the prior law and the Real Property Registry Act because the articles that constitute the basis for this analysis are basically the same. Therefore, the Puerto Rico Supreme Court decisions in the Registrar's faculties are relevant under either statute.

---

[10] Article 232 of the Real Property Registry Act states the following in the Spanish language:

"El Registrador es autónomo en su facultad calificadora. Contra su calificación solamente procederá el recurso que se establece en este subtítulo sin que los tribunales u otras autoridades puedan obligar o impedir que los Registradores practiquen cualquier operación registral. De igual forma, no podrán requerir la comparecencia de los Registradores y Registradoras para testificar, sobre la validez o nulidad de los asientos, o sobre la calificación o cualquier otro asunto capaz de ser objeto de certificación registral que se expida según se dispone en este subtítulo. A esos efectos se remitirán exclusivamente a las certificaciones registrales que se expidan según se dispone en este subtítulo.

La autonomía del Registrador no se extiende a su deber de cumplir con las normas y directrices emitidas por el Secretario de Justicia y/o el Director Administrativo del Registro." 30 L.P.R.A. §6384.

[11] Article 65 of the prior mortgage law provided:

"[t]he Registrar shall have autonomy in his judging powers and there shall be only one lawful recourse against his judgment, which is outlined in the following sections, so that the courts or other authorities cannot, in any way, oblige or prevent a Registrar from performing any function pertaining to the registration process.

Interested parties may argue, among themselves and in a plenary suit, anything concerning the validity of the documents subject to recording and obtain the corresponding cautionary notice to protect the suit being presented in accordance with the first paragraph of §2401 of this title." 30 L.P.R.A. §2268.

-30-

The Supreme Court of Puerto Rico has held that the Property Registrar is a quasi-judicial officer because part of his or her functions require to pass judgment upon the examination of documents and certify their validity over titles that have already been registered. See RFC Mortgage Co. v. Registrador, 60 D.P.R. 235, 239 (1942)[12]; Santiago v. E.L.A., 163 D.P.R. 149, 160 (2004). In U.S.I. Properties, Inc. v. Registrador, the Supreme Court of Puerto Rico explains in detail the reasoning behind the adoption of an intermediate function for the property registrar; namely the voluntary jurisdiction, as follows:

> "It has been unanimously held that the principle of legality in force in our legal system makes necessary the Registrar's function of passing on documents so that only valid and perfect titles can gain access to the Registry. Notwithstanding this consensus, there have been serious debates on the legal nature of the function of passing on documents. In the past, these controversies were born of two (2) basic criteria: the *judicial junction* and the *administrative junction.* Today, however, the intermediate solution of voluntary jurisdiction—that rejects these two extremes—has become the prevailing theory. 2 Ramón M. Roca Sastre and Luis Roca-Sastre Muncunill, Derecho Hipotecario 260-266, Barcelona, Ed Bosch (7th ed. 1979); José M. Chico y Ortiz, Teoría, práctica y formula de la calificación registral 38-60, Madrid, Marcial Pons-Libros Jurídicos (1977); 3 Nueva enciclopedia jurídica española 566-575, Barcelona, Ed, F. Seix (1951).
>
> In Puerto Rico, since before the approval of the new Mortgage Law in 1979, we subscribed to the intermediate theory. Thus, in L. Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267-273 [5 P.R. Offic. Trans. 364, 372] (1976), we pointed out that "[t]he function of passing on titles of the Registrar of the real property *has the characteristic nature of the acts of voluntary jurisdiction [non-contentious], although with some peculiarities which distinguish it*, one of them being that it is exercised by an administrative officer, as is the Registrar of the Property." (Emphasis added). *The importance of this acknowledgement is that this theory excludes the idea that the Registrar is a judge that adjudicates rights*.
>
> Thus, as we have seen, from sec. 64 of the Mortgage Law, it arises that the object of passing on documents is the examination of the legality of the extrinsic forms of the documents, the capacity of the parties, and the validity of the acts of disposition contained in the deeds, based on the contents of the documents and of the Registry entries.
>
> Section 76.1 of the Mortgage Regulations, 30 L.P.R.A. §2003-76.1, special [Spanish] edition, explains that the Registrar shall consider as legal deficiencies 'all those that affect the forms of the documents, the efficacy of the responsibility or rights included in the same, whenever they arise from the texts of the mentioned documents or can be observed

---

[12] "Por otra parte, en Puerto Rico un registrador de la propiedad es un oficial cuasi judicial que ha prestado fianza y que rinde importantes servicios profesionales que envuelven el ejercicio de su criterio al examinar y certificar la validez de documentos sobre títulos ya inscritos." RFC Mortgage Co. v. Registrador, 60 D.P.R. 235, 239.

by a simple inspection of them.' It arises from both texts that the Registrar is barred from taking notice of matters foreign to the Registry and to the documents filed. 'In the registry proceeding, the evidence is assessed; the Registrars will pass on the titles from what arises therefrom and from the Registry entries.' José L. Lacruz Berdejo and Francisco Sancho Rebullida, Derecho Inmobiliario Registral 354, Barcelona, Librería Bosch (1977).

Though when dealing with notarial documents, registrars certainly have more ample decisional faculties that allow them to corroborate whether the executed legal transaction is valid or void, when the transaction is sanctioned by a court of justice, they must rely on the judgment's presumption of validity." U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448, 465-466 (1989), 24 P.R. Offic. Trans. 304, June 30, 1989.

In R&G Premier Bank v. Registradora, 158 D.P.R. 241 (2002), the Supreme Court of Puerto Rico expressed itself once again as to the nature, extent and scope of the Registrar's faculty to pass upon documents and stated as follows:

"[a]s part of the principle of legality in force in our legal system, Property Registrars have the legal obligation of verifying that all documents that have been presented before the Registry have valid and perfect titles. Gasolinas PR v. Registrador, 155 D.P.R. 652 (2001); U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448, 465 (1989); L. Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267 (1976). This verifying function is limited to determining whether a document may or may not be registered. The Registrar does not have the faculty to declare the existence or inexistence of doubtful rights. Gasolinas P.R. v. Registrador, supra; Preciosas V. Del Lago v. Registrador, 110 D.P.R. 802, 810 (1981).

It is by means of the mechanism of passing on documents that the Property Registrar employs the principle of legality and ascertains the legality of the titles presented to the Registry before registering the same. Gasolinas P.R. v. Registrador, supra; Western Fed. Sav. Bank v. Registrador, 139 D.P.R. 328 (1195); Preciosas V. Del Lago v. Registrador, supra.

The passing on documents constitutes the cornerstone of the principle of legality. The passing on documents requires from the Property Registrar to pass judgment upon the validity and the efficacy of the juridical transactions contained in the documents presented by which only the ones that abide with all the legal requirements gain access to the Property Registry. Narváez v. Registrador, 156 D.P.R. 1 (2002); Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698 (1992)" (translation ours) In R&G Premier Bank v. Registradora, 158 D.P.R. 241, 246-247.

After due consideration of the applicable Puerto Rico statutes and jurisprudence, the court concludes that the nature, extent and scope of the Registrar's faculty to pass upon documents that

are presented to the Property Registry is quasi-judicial in nature and requires the Property Registrar to pass judgment upon the validity and the efficacy of the documents presented and whether the same will be allowed to gain access to the Property Registry. The faculties of the Property Registrar when passing on documents include examining the legality of the extrinsic forms of the documents presented, the capacity of the parties, and the validity of the acts of disposition contained in the deeds, based on the contents of the documents and of the Registry entries. See 30 L.P.R.A. §6381[13]. Article 42 of the prior mortgage law, 30 L.P.R.A. §2205,[14] is analogous to Article 9 of the current mortgage law.

Article 9[15] of the Real Property Registry Act provides:

"[t]he titles that are recordable are the following:

1. Public deeds.
2. Official documents issued by judicial authority or a competent official.
3. Notarial acts (documents) to process the matters and proceedings established in the Non-Contentious Notarial Matters Act, secs. 2155 et seq. of Title 4.
4. Administrative certifications issued by competent officials of the agencies of the Commonwealth of Puerto Rico, its corporations, any of its municipalities or any United States agency in conformity with the conferred faculty given by its enabling law.
5. Any other document whose recordation (registration) is permitted by law.

---

[13] Article 9 of the Real Property Registry Act states the following in the Spanish language:
"Los documentos que motivan un asiento de inscripción son los siguientes:
1. Escritura pública.
2. Documento auténtico expedido por autoridad judicial o funcionario competente.
3. Actas notarialas para tramitar los asuntos y procedimientos contemplados en la Ley de Asuntos no Contenciosos ante Notario, secs. 2155 et seq. del Título 4.
4. Certificaciones administrativas expedidas por funcionarios competentes de las agencias del Estado Libre Asociado de Puerto Rico, sus corporaciones, cualquiera de sus municipios o de cualquier agencia del gobierno de los Estados Unidos conforme la facultad conferida por su respectiva ley habilitadora.
5. Cualquier otro document cuya inscripción sea dispuesta por ley.

La instancia se utilizará para la aclaración de particularidades como complemento a transferencias o acciones sobre bienes inmuebles dispuestas por ley y para solicitar la cancelación de gravámenes prescritos. Una instancia por sí sola no constituye un documento admisible para producir un asiento en el Registro de la Propiedad." 30 L.P.R.A. §6016.

[14] Article 42 of the prior mortgage law stated as follows: [i]n order to be recordable, titles covered by §2201 of this title must appear in deed, judgments or official documents issued by judicial authority or a competent official, in the manner prescribed by law and regulations, except in cases where the law establishes a different procedure." 30 L.P.R.A. §2205.

-33-

> The document ("instancia") will be used to clarify particularities such as supplements to transfers or shares over real property in conformity with the law and to request the cancellation of prescribed liens. The document ("instancia") by itself does not constitute an admissible document to generate an entry in the Property Registry. 30 L.P.R.A. §6016 (translation ours).

Article 20[16] of the Real Property Registry Act provides:

> "The following types of entries shall be made in the Registry books and information systems: presentations, registrations, cautionary notices, cancellations and notations." 30 L.P.R.A. §6035.

In the instant case, the Property Registrar's actions of passing on the "Instancia" were not ministerial or clerical in nature. The "Instancia" document requested the Property Registrar to alter the entries which corresponded to the ranking of liens of a recorded usufruct and a recorded mortgage. The concept of rank "… is used to designate the position of real property rights in comparison to other real property rights in the registry, the position in the hierarchical order of rights that fall upon the same real property. Consequently, when comparing the positions of two real property rights, the same are referred to as superior or inferior ranks[17]" (translation ours). L. Rafael Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3d. ed. San Juan, Jurídica Eds., 2012, pg. 210. Therefore, the court concludes that the ministerial act exception does not apply to the instant case. The court further concludes that ITC violated the automatic stay pursuant to 11 U.S.C. §362(a)(4) when it requested the Property Registrar to alter the ranks of the liens without requesting relief from the automatic stay from the Bankruptcy Court. ITC by filing the "Instancia" (document) requested the Property Registrar to subordinate the Debtor's deed of

---

[16] Article 80 is the corresponding article under the prior law, 30 L.P.R.A. §2301. Both read the same.

[17] The citation in the Spanish language reads as follows: "[e]l concepto *rango* se utiliza para designar la posición registral de un derecho real respecto a otros derechos reales, la posición en el orden jerárquico de derechos que recaen sobre un mismo inmueble. Por ello se habla de rango superior o inferior cuando se comparan las posiciones de dos derechos inscritos." L. Rafael Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3d. ed. San Juan, Jurídica Eds., 2012, pg. 210.

usufruct (lien) to that of one the mortgages, meaning that the Debtor's real property rights were altered resulting in its usufruct lien having an inferior rank.

The court notes that the "Instancia" to harmonize documents only refers to two deeds; namely usufruct deed number 37 (16th inscription entry) and the mortgage deed number 208 to guarantee a promissory note in the principal amount of $10,610,527 (17th inscription entry) (Docket No. 371-1). The "Instancia" did not request for mortgage deed number 236 to guarantee a promissory note in the principal amount of $2,450,000 (18th inscription) to be afforded a superior rank in relation to the usufruct deed (16th inscription). However, pursuant to a Certification from the Property Registry dated October 31, 2016 (Docket No. 295-2) the usufruct deed was subordinated to the two (2) mortgage deeds. The "Instancia" was presented to the Property Registrar on August 3, 2015 under the prior mortgage law and regulations. The request in the "Instancia" was made pursuant to §870.554[18] of the Mortgage Law Regulations, which corresponds to Article 150, 30 L.P.R.A. §2501, and is included in subchapter 9 titled rectification of errors in entries, which states:

> "If the titles by virtue of which the erroneous recordation of entries was made were already returned to the interested parties, these can be presented by the interested party, with an "Instancia" requesting the requested correction. The presentation of the documents and the entry will be free of charge."

Articles 110, and 150-154 of the Mortgage Law of 1979, 30 L.P.R.A. §§ 2501-2505 and articles 141.4 through articles 1441.1 of Regulation 2674 regard rectification of errors in entries. Under the Real Property Registry Act articles 211-217, 30 L.P.R.A. §§6351-6357 and rules 211.2 through 215.1 of Regulation 8814 regard rectification of errors in entries. Articles 110, 150, 151,

---

[18] §870.554 of the Mortgage Regulations provides in the Spanish language: "Corrección después de la entrega de los títulos a los interesados. Si los títulos en virtud de los cuales se redactaron erróneamente los asientos hubiesen sido ya entregados a los interesados, podrán éstos ser presentados por el interesado, con una instancia solicitando la corrección deseada. La presentación y el asiento que se practique se harán libres del pago de derechos."

-35-

and 154 of the prior mortgage law are very similar to Articles 210-214 and 217 of the Real Property Registry Act. The analysis would not differ under the two different mortgage laws.

Article 110[19] of the prior mortgage law provides:

"[i]naccuracy of the Record is understood to mean any disagreement on recordable rights which may exist between the Record and the legal reality outside the Registry.

Rectification of the Registry may be requested by the title holder of dominion or real right which is not recorded, which is recorded erroneously, or which is impaired by the inaccurate entry.

Rectification shall be made according to the following rules:

(a) When the inaccuracy arises from a legal decision on real property which has not had access to the Registry, a correction shall be made: First, by recording the correct title, if possible; second, by resumption of the successive transaction in accordance with the provisions of this subtitle; and third, by court order.

---

[19] Articles 211 and 212 of the Real Property Registry Act are the equivalent and state the following in the Spanish language:

Article 211 states:

"[p]or inexactitud del Registro se entiende todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral. Para corregir las inexactitudes se rectificarán los asientos de conformidad con este Título. En ningún caso la rectificación del Registro perjudicará los derechos legítimamente adquiridos por un tercero que reúna las condiciones fijadas en ley." 30 L.P.R.A. §6351.

Article 212 states:

"[l]a rectificación del Registro podrá ser solicitada por el titular del dominio o derecho real que no esté inscrito, que lo esté erróneamente, o que resulte lesionado por el asiento inexacto.

La rectificación se practicará con arreglo a la siguientes normas:

1. Cuando la inexactitude surja por no haber tenido acceso al Registro alguna relación jurídica inmobiliaria, la rectificación se hará:
    a. Por la inscripción del título procedente, si ello es possible,
    b. Por reanudación del tracto sucesivo, y
    c. Por resolución judicial que ordene la misma.
2. Cuando la inexactitud deba su origen a la extinción de algún derecho inscrito o anotado, la rectificación se hará mediante la correspondiente cancelación.
3. Cuando la inexactitud tenga lugar por defecto o error de algún asiento, se rectificará el Registro, según lo establecido en este título.
4. Cuando la inexactitud proceda de la falsedad, nulidad o defecto del título que motive el asiento por cualquiera otra causa no especificada anteriormente, la rectificación requerirá el consentimiento del titular afectado por ella o, a falta del mismo una resolución judicial.

En los casos en que haya de solicitarse judicialmente la rectificación, deberá presentarse la demanda contra todos aquéllos a quienes el asiento que se trata de rectificar conceda algún derecho.

La acción de rectificación será inseparable del dominio o derecho real de que se deriva." 30 L.P.R.A. §6352.

(b) When the inaccuracy is due to the cancellation of a recorded or noted right, correction shall be made by means of a cancellation, in accordance with the provisions of this subtitle.

(c) When the inaccuracy occurs because of a defect or error in an entry, the Record shall be corrected according to what is established in this subtitle.

(d) When the inaccuracy is based on falsification, annulment or a reason not previously specified, the correction shall require the consent of the titleholder affected by the inaccuracy, or when this is lacking, a court order shall be required.
In cases where judicial correction must be sought, the suit must be filed against all those to whom the entry which it is attempting to correct grants some right.

Corrective action shall be inseparable from the dominion or real right from which it is derived.

In no case, may correction of the Registry impair the rights legitimately acquired by a third party who meets the conditions hereby established." 30 L.P.R.A. §2360.

Article 150[20] of the prior mortgage law provides:

"[e]rrors made by the Registrar while making an entry can be rectified as provided in the regulations.

When errors have been made in presentation entries or notes which are not made directly and specifically by virtue of a title, and in reference indications, they may be rectified even though the title motivating the registration may not be available, provided that the corresponding main registration is sufficient to reveal the error and it is possible to rectify the later by it." 30 L.P.R.A. §2501.

Article 151[21] of the prior mortgage law provides:

---

[20] Article 213 of the Real Property Registry Act states the following in the Spanish language:
"[l]os errores cometidos por el Registrador al extender un asiento y que no afecten el negocio jurídico inscrito podrán ser corregidos según se disponga en el reglamento.
Cuando los errores se hayan cometido en asientos de presentación o notas de referencia o que no se practiquen en virtud de un título, podrán corregirse aunque no se tenga a la vista el título que motive la inscripción principal respectiva baste para dar a conocer el error y sea posible rectificarlo por ella." 30 L.P.R.A. §6353.

[21] Article 214 of the Real Property Registry Act states the following in the Spanish language:
"[l]os errores cometidos por el Registrador al extender un asiento podrán ser corregidos, siempre que no afecten derechos de titulares inscritos, bien de oficio o a solicitud de parte interesada, y siempre que se tenga a la vista el instrumento o la imagen digital del instrument que motivó la acción.

Cuando la rectificación pudiera afectar derechos de titulares inscritos se exigirá el consentimiento de éstos para corregir el error o una resolución judicial ordenando la corección del asiento." 30 L.P.R.A. 6354.

"[e]rrors made by the Registrar when making an entry may be rectified, provided they do not affect the rights of registered titleholders, either automatically or at the request of the interested party, provided the instrument motivating the action is at hand.

When rectification might affect the rights of registered titleholders, their consent or a judicial resolution ordering the rectification of the entries shall be required." 30 L.P.R.A. §2502

Article 154[22] of the prior mortgage law provides:

"[r]ectification of an error shall become effective on the date it took place, which date must appear in the rectification entry itself, without prejudice to the right which third parties may have to file suit for misrepresentation or nullity of the title referred to in the entry containing the error or in the entry itself." 30 L.P.R.A. §2505.

In <u>Gasolinas P.R. v. Registrador</u>, 155 D.P.R. 652, 682-684 (2001), the Supreme Court of Puerto Rico analyzed Articles 150, 151 and 154 of the prior mortgage law and concluded as follows:

"[t]he cited provisions show that, ordinarily, an error in the entry of presentation (and consequently, in the bill of entry of presentation) may be corrected by the Registrar, *motu propio,* regardless of whether the titles that gave rise to the entries are in the Registry office; and if they are not available, they may be corrected by the Registrar of Property when the error and the information necessary to correct it arise from the main recordation. Under no circumstances, however, may the Registrar correct the error by crossing it out; the preparation of a new entry is necessary. G.R. sec. 141.1 of the Mortgage Regulations.

The law, however, does provide that the authority to correct, *motu propio*, an entry of presentation comes into effect when such a correction may affect the rights of registered titleholders, as is the situation in this case. In that respect, the second paragraph of Mortgage Law sec. 151 provides:

> *When rectification might affect the rights of registered titleholders, their consent or a judicial resolution ordering the rectification of the entries shall be required.* 30 L.P.R.A. §2502 (Emphasis added) See also G.R. secs. 141.5 and 142.1 of the Mortgage Regulations.

Thus, before correcting or rectifying any fact set forth in the Registry of Property, the consent of these titleholders whose rights could be affected by the correction must be

---

[22] Article 217 of the Real Property Registry Act states the following in the Spanish language:
"[l]a rectificación de un error surtirá efecto desde el momento en que es fechada y firmada por el Registrador. La rectificación será sin perjuicio del derecho que puedan tener los terceros para reclamar contra la falsedad o nulidad del título a que se refiera el asiento que contenía el error o del mismo asiento." 30 L.P.R.A. §6357

sought; and in the absence of this consent, "the Registrar or the party seeking the correction must first obtain a court decision to that effect" ordering the correction of the entry. G.R. sec. 141.5 of the Mortgage Regulations, at 392.

Now then, the Mortgage Law provides that rectification of an error shall become effective on the date said correction takes place (Mortgage Law sec. 154 (30 L.P.R.A. §2505)), provided, of course, that said change would not affect those third persons protected by the Registry's attestation authority. See Mortgage Law sec. 110 (30 L.P.R.A. §2360: "In no case, may correction of the Registry impair the rights legitimately acquired by a third party who meets the conditions hereby established."

In other words, ordinarily, according to the law, the effectiveness of the correction of errors in Registry entries under this statutory scheme shall be effective as of the moment they are made. Nonetheless, we must clarify that if all the titleholders affected by the correction give their consent—including subsequent titleholders who trusted and believed in the status publicized by the Registry—the effect of the correction may be retroactive to the date on which the deed was presented for recordation. Otherwise, it would make no sense to seek the consent of titleholders because if, even with their consent, the correction was always prospective, their rights would not be affected in any way, and such consent would be absurd." Gasolinas P.R. v. Registrador, 155 D.P.R. 652, 682-684.

In view of the foregoing, this court further concludes that not only did ITC violate the automatic stay provisions of section 362(a)(4) when it requested the Property Registrar to alter the ranks of the liens without requesting relief from the automatic stay from the Bankruptcy Court, but by also not obtaining the consent of the Debtor, as an affected titleholder, pursuant to Article 151 of the prior mortgage law which was the one in effect at the time.

Retroactive Relief from the Automatic Stay

PRCI requested in the alternative that if the court were to find a violation of the automatic stay occurred, for the court to exercise its discretionary authority to retroactively lift the automatic stay for purposes of the correction of the recorded ranks, thus preserving rather than voiding the current correct ranks. PRCI argues that retroactive relief from the stay should be granted because if the court voids the 21st inscription, then it would have to obtain a court order from the Puerto Rico Court of First Instance with the court's lifting the stay for that limited purpose.

Section 362(d)[23] provides that the automatic stay may be lifted in certain situations. However, it is not entirely clear whether section 362(d) encompasses retroactive relief. See In re Soares, 107 F. 3d. at 976. The First Circuit in In re Soares concluded that section 362(d) authorizes retroactive relief from the automatic stay by focusing its analysis on the distinction between the power to terminate the stay and the power to annul the stay. The court reasoned as follows:

> "[t]he only plausible distinction between the two verbs in this context is that terminating the stay blunts it prospectively, from the moment the court's order enters, whereas annulling the stay erases it retrospectively, as of some date prior to the entry of the court's order (reaching as far back as the date when the debtor filed the bankruptcy petition, if the court so elects).

> Seen from this perspective, Congress' grant of power of annulment is meaningful only if the court may thereby validate actions taken before the date on which the court rules. On any other construction, annulment lacks any independent significance; it merely replicates termination. It follows, therefore, that section 362(d) authorizes retroactive relief from the automatic stay. Accord. Siciliano, 13 F. 3d at 751; Albany Partners, 749 F. 2d at 675; see also Franklin Sav. Ass'n v. Office of Thrift Supervision, 31 F. 3d 1020, 1023 (10th Cir. 1994) (recognizing the authority to annul the stay and thereby grant retroactive relief); Sikes v. Global Marine, Inc., 881 F. 2d 176, 178-179 (5th Cir. 1989) (same)." Id. at 976-977.

Retroactive relief from the automatic stay is only appropriate in extreme circumstances and each case is *sui generis* and must be analyzed accordingly. See In re Soares, 107 F. 3d at 977 ("We conclude, therefore, that although courts possess a limited discretion to grant retroactive relief from the automatic stay, instances in which the exercise of that discretion is justified are likely to be few and far in between"); In re Myers, 491 F. 3d 120 (3rd Cir. 2007). "The breathing room provided by the stay would be limited if debtors feared regular retroactive validation. Debtors would be forced to defend all actions, even those stayed, because the stay might be retroactively annulled and a default by the debtor might become binding." Alan N. Resnick &

---

[23] Section 362(d) provides in pertinent part: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> §362.12[1] (16th ed. 2018). Therefore, retroactive relief should only be granted in unusual scenarios such as; when a creditor inadvertently violated the automatic stay due to ignorance of the pending bankruptcy; whether the debtor has acted in bad faith; whether the property is necessary for an effective reorganization; whether grounds for relief from the stay existed and a motion if filed, would likely have been granted prior to the automatic stay violation; whether failure to grant retroactive relief would cause unnecessary expense to the creditor; or whether the creditor changed its position in reliance of the validity of its action. <u>See</u> Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., <u>Bankruptcy Law Manual</u>, §7.2 Vol. 1 (5th ed. 2018), pgs. 1524-1525; Alan N. Resnick & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> §362.12[1]; <u>In re Soares</u>, 107 F. 3d at 977.

In the instant case, PRCI, not ITC which is the creditor that violated the provisions of the automatic stay is requesting retroactive relief from the stay. In the instant case, the creditor ITC knew of the bankruptcy filing and failed to request relief from the automatic stay in order to present (file/submit) to the Property Registrar an "Instancia" or document that would subordinate the rank of the Debtor's usufruct lien to two (2) mortgages. Moreover, the court concluded that if the rights of third parties as they appear in the Property Registry will be affected, the same must be notified. In this case, ITC failed to notify the Debtor about the "Instancia" or document it had filed as to the alteration of the rank of the Debtor's usufruct lien. Thus, the court finds that there are no unusual or unusually compelling circumstances in this particular case that merit such an extraordinary remedy in favor of either ITC or PRCI.

ITC violated section 362(a)(4) of the automatic stay when it presented to the Property Registrar the "Instancia" or document to alter the rank of the Debtor's usufruct lien and subordinate the same to the two (2) mortgages. The Property Registrar acted upon the "Instancia" or document filed and proceeded to alter the ranks. The court concludes that ITC's actions are

-41-

void and therefore have no effect. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy §362.12[1] (16th ed. 2018); Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §7.2 Vol. 1 (5th ed. 2017), pgs. 1519-1520 ("Most courts say that actions taken in violation of the stay are void *ab initio* and have no effect"); In re Soares, 107 F. 3d at 976. Consequently, the inscription over parcel no. 3834 is void.

In the instant case, the Debtor is a corporation and not an individual (meaning a natural person), and as such it is not entitled to damages pursuant to 11 U.S.C. §362(k)(1). See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy §362.12[3] (16th ed. 2018) ("Although the automatic stay is of critical importance in bankruptcy cases, the better approach is to recognize that section 362(k) provides a remedy only for natural persons"); In re Spookyworld, Inc. v. Town of Berlin (In re Spookyworld), 346 F. 3d 1, 7 (1st Cir. 2003) (holding that a debtor that is a corporation cannot sue under §362(h) for a violation of the automatic stay).

However, corporations may request bankruptcy courts to award damages for automatic stay violations pursuant to 11 U.S.C. §105(a) for contempt of a court order. Bankruptcy courts possess discretionary authority to award damages for automatic stay violations under section 105(a) which authorizes the court to enter "necessary and appropriate" orders. See In re Spookyworld, 346 F. 3d. at 7. "A violation of the stay is punishable as contempt of court. Most courts will impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay is considered as equivalent to a court order. If the conduct is willful, even if based upon the advice of counsel, contempt if not an appropriate remedy." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy §362.12[2] (16th ed. 2018).

The Debtor in its *Motion for Civil Contempt for Violation of the Automatic Stay Injunction* (Docket No. 38) had requested the court to sanction ITC for violating the automatic stay and thus, order ITC to pay the Debtor reasonable legal fees due to ITC's unlawful actions. The Debtor and

ITC filed a Stipulation (Docket No. 397) in which ITC consented to Debtor's request for a writ of execution to restore the *status quo* of the Debtor's right of usufruct at the date of the filing of the petition, without prejudice to any interested party to file a motion for relief from the automatic stay. In response, the Debtor relinquished its request for sanctions, compensatory damages, and attorney's fees. In this case, the court concludes that the Debtor waived its remedy (sanctions) regarding civil contempt because they waived it in the Stipulation. PRCI objected to the Stipulation because the rank of its mortgage liens was going to be subordinated based upon the Stipulation and the writ of execution.

Conclusion

After considering the relevant facts and applicable legal provisions of the Puerto Rico Civil Code, Puerto Rico Mortgage and Property Registry act of 1979, the Real Property Registry Act of 2015, and the Bankruptcy Code as explained above, the Court finds and concludes as follows:

This court finds that ITC violated the automatic stay provisions of section 362(a)(4) when it filed the "Instancia" (document) by which it requested the Property Registrar to alter the ranks of the liens and subordinate the Debtor's deed of usufruct (lien) to that of one of the mortgages, meaning that the Debtor's real property rights were altered resulting in its usufruct lien having an inferior rank without requesting relief from the automatic stay from the Bankruptcy Court. Moreover, ITC did not obtain the consent of the Debtor, as an affected titleholder pursuant to Article 151 of the prior mortgage law which was the one in effect at the time. The court holds that the ministerial act exception does not apply to the instant case.

The Property Registrar acted upon the "Instancia" or document filed and proceeded to alter the ranks. The court concludes that ITC's actions are void and therefore have no effect. Therefore, the actions taken by the Property Registrar altering the ranks of the liens are also void.

The Debtor's *Motion for Civil Contempt for Violation of the Automatic Stay Injunction* against ITC for a willful violation of the automatic stay under 11 U.S.C. §362(a) is granted.

However, for the reasons stated herein, the court also holds that the Debtor is not entitled to its remedy (for sanctions) regarding civil contempt because the Debtor waived the same in the Stipulation with ITC, which this Court approves. The court specifically notes that the Stipulation does not prevent PRCI from pursuing any rights it deems appropriate, provided it requests and the court grants relief from the automatic stay.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of July 2018.

Enrique S. Lamoutte
United States Bankruptcy Judge

-44-